GUARANTY BANK AND TRUST CO. *v.*
VICTOR J. DOWLING
(2536)

HULL, BORDEN and SPALLONE, Js.

Argued March 14—decision released July 2, 1985

*Louis B. Blumenfeld,* with whom, on the brief, was *Ellen M. Burns,* for the appellant-appellee (defendant).

*Samuel B. Feldman,* with whom were *Linda B. Meyers* and, on the brief, *Scott M. Schwartz,* for the appellee-appellant (plaintiff).

SPALLONE, J. The plaintiff brought this action to collect from the defendant the amount due under a promissory note which the defendant endorsed. The facts, insofar as they are undisputed, are as follows.

On February 4, 1974, Route 156 Service Corporation (the maker) executed a promissory note to the order of the plaintiff in the amount of $5000. The defendant signed the back of the note as endorser. The principal of the note was to be repaid over a twelve month period, ending on February 15, 1975. The defendant was the attorney for, and had been an officer of, the maker. The maker defaulted on the note in November, 1974, at which point $1795.16 remained outstanding. In November, 1975, the plaintiff debited that amount from an account of a partnership in which the defendant had an interest, and returned the note to the maker bearing the legend "paid in full." Upon realizing that the debit was improper, the plaintiff restored the funds to that account. The note, which was never returned to the plaintiff, remained unpaid. The defendant knew that the note was never paid, because he received the

bank statements of the partnership and initiated the restoration of the funds to the partnership account.

On February 9, 1976, the plaintiff brought this action against the defendant, as endorser, for payment of the outstanding principal as well as interest and attorney's fees. After a trial to the court, judgment was rendered for the plaintiff in the amount claimed due under the note. The court, however, denied the plaintiff's request for interest and attorney's fees. From that judgment, the defendant appeals and the plaintiff cross appeals. The cross appeal is restricted to the issue of whether the trial court erred in refusing to award the plaintiff interest and attorney's fees.

I

THE APPEAL

On appeal, the defendant has raised six claims of error. Three of the claims are disposed of by our resolution of the question of whether the cancellation of the note was unintentional. The remaining issues are whether the trial court erred in allowing the plaintiff to recover because it did not prove possession or ownership of a lost instrument; in allowing the plaintiff to recover when, by surrendering the note, it impaired the defendant's right of recourse; and in finding that the defendant was bound by the terms of the note, rather than being exonerated from liability by a course of dealing which established the need for notice to him of default, despite the terms of the note.

We first consider whether the trial court erred in its conclusion that the cancellation of the note was unintentional. General Statutes § 42a-3-605 (1) provides that the holder of an instrument may discharge a party

by "intentionally cancelling" the instrument.[1] Under § 42a-3-601, a discharge of the principal debtor also discharges the endorser.[2] The defendant maintains that the cancellation in this case was intentional and that the plaintiff's discharge of the maker also discharged him.

The cancellation of a negotiable instrument generally has no effect when it is made by mistake. See, e.g., *First Galesburg National Bank & Trust Co.* v. *Martin*, 58 Ill. App. 3d 113, 373 N.E.2d 1075 (1978); *Richardson* v. *First National Bank of Louisville*, 660 S.W.2d 678, 679 (Ky. App. 1983); *Gibraltar Savings Assn.* v. *Watson*, 624 S.W.2d 650, 652 (Tex. App. 1981); *Reid* v. *Cramer*, 24 Wash. App. 742, 746, 603 P.2d 851 (1979). "Mistake" is not readily susceptible of general

---

[1] General Statutes § 42a-3-605 provides as follows: "(1) The holder of an instrument may even without consideration discharge any party (a) in any manner apparent on the face of the instrument or the endorsement, as by intentionally cancelling the instrument or the party's signature by destruction or mutilation, or by striking out the party's signature; or (b) by renouncing his rights by a writing signed and delivered or by surrender of the instrument to the party to be discharged."

[2] General Statutes § 42a-3-601 provides as follows: "(1) The extent of the discharge of any party from liability on an instrument is governed by the sections on (a) payment or satisfaction as provided in section 42a-3-603; or (b) tender of payment as provided in section 42a-3-604; or (c) cancellation or renunciation as provided in section 42a-3-605; or (d) impairment of right of recourse or of collateral as provided in section 42a-3-606; or (e) reacquisition of the instrument by a prior party as provided in section 42a-3-208; or (f) fraudulent and material alteration as provided in section 42a-3-407; or (g) certification of a check as provided in section 42a-3-411; or (h) acceptance varying a draft as provided in section 42a-3-412; or (i) unexcused delay in presentment or notice of dishonor or protest as provided in section 42a-3-502.

"(2) Any party is also discharged from his liability on an instrument to another party by any other act or agreement with such party which would discharge his simple contract for the payment of money.

"(3) The liability of all parties is discharged when any party who has himself no right of action or recourse on the instrument (a) reacquires the instrument in his own right; or (b) is discharged under any provision of this article, except as otherwise provided by section 42a-3-606 with respect to discharge for impairment of recourse or of collateral."

definition. To the extent that a comprehensive defini-
tion of the term can be fashioned, it has been said that
it "signifies an erroneous mental conception which
influences a person to act or to omit to act . . . ." 54
Am. Jur. 2d, Mistake, Accident, or Surprise § 1.
Whether the plaintiff, in marking the note "paid in full"
and returning it to the maker, did so on the basis of
such an erroneous conception is a question of mental
state or intent. See *Carter County Bank* v. *Craft Indus-
tries, Inc.,* 639 S.W.2d 661, 662 (Tenn. App. 1982); *Reid*
v. *Cramer,* supra. Intent is a question of fact, and the
trial court's conclusion in that regard, if not clearly
erroneous, will not be disturbed. Practice Book
§ 3060D; *Munn* v. *Scalera,* 181 Conn. 527, 531, 436
A.2d 18 (1980).

The trial court had before it evidence that the plain-
tiff surrendered the instrument believing that the debit
against the partnership account had satisfied the debt.
The defendant himself testified that the debit was erro-
neous and that "[a]fter the *mistake* was pointed out to
[the plaintiff, it] restored the funds to the partnership
account . . . ." (Emphasis added.) The court could
have reasonably inferred that the plaintiff would not
have surrendered the note if it did not, in good faith,
believe it had, in fact, been paid. We thus find that the
trial court's factual conclusion that the discharge was
mistaken was not clearly erroneous. Practice Book
§ 3060D.

Having concluded that the note was cancelled by mis-
take, the trial court properly determined, under
§ 42a-3-605 (1), that the debt was unintentionally dis-
charged. *First Galesburg National Bank & Trust Co.*
v. *Martin,* supra; *Carter County Bank* v. *Craft Indus-
tries, Inc.,* supra, 663. While the mistaken discharge
may well have been attributable to the plaintiff's negli-
gence, that fact does not permit the defendant to gain
a benefit to which he is not entitled, particularly with-

out any showing that he changed his position in reliance on the plaintiff's act. *Cameron State Bank* v. *Sloan,* 559 S.W.2d 564, 568 (Mo. Ct. App. 1977); see *Union & New Haven Trust Co.* v. *Thompson,* 134 Conn. 607, 610, 59 A.2d 727 (1948). We accordingly conclude that the unintentional cancellation of the note did not discharge the defendant of his obligation as endorser.

The defendant further argues that the plaintiff is not entitled to recover on the note because it did not prove possession or ownership of a lost instrument. This argument is based on General Statutes § 42a-3-301 which provides that: "The holder of an instrument whether or not he is the owner may transfer or negotiate it and, except as otherwise provided in section 42a-3-603 on payment or satisfaction, discharge it or enforce payment in his own name." The defendant contends that since the plaintiff was not in possession of the note, it was not a holder as that term is defined in § 42a-1-201 (20),[3] and consequently that it could not recover as a holder under § 42a-3-301.

It is undisputed that the erroneously cancelled note was never returned by the maker to the plaintiff. The Uniform Commercial Code, however, addresses situations such as this, where the instrument sought to be enforced is unavailable, by creating an exception to the general rule that one must hold an instrument in order to enforce its payment. Section 42a-3-804 provides in part that "[t]he owner of an instrument which is lost, whether by destruction, theft or otherwise, may maintain an action in his own name and recover from any party liable thereon upon due proof of his ownership, the facts which prevent his production of the instrument and its terms. . . ." Loss under that statute may

---

[3] General Statutes § 42a-1-201 (20) defines "holder" as "a person who is in possession of a document of title or an instrument or a certificated investment security drawn, issued or endorsed to him or to his order or to bearer or in blank."

be sufficiently established by showing that the instrument was improperly returned to the maker by the mistake of an employee. 6 Anderson, Uniform Commercial Code (3d Ed.) § 3-804:6. As we have already noted, the plaintiff in this case established that the instrument was mistakenly surrendered to the maker and was never returned. This sufficiently establishes that the note was lost for purposes of § 42a-3-804.

In order to sue under that statute, however, the terms of the lost instrument must also be proven. The plaintiff offered into evidence a photocopy of the note. The defendant maintains that the photocopy did not provide a sufficient basis from which to conclude that it represented the terms of the note. We disagree. Although the defendant objected to the introduction of the photocopy, he offered no evidence that it was not an accurate copy nor, in fact, did he dispute its terms. While the instrument itself would clearly have been the best evidence, we accept the plaintiff's explanation of the original's loss. *Laurel Bank & Trust Co.* v. *Sahadi,* 32 Conn. Sup. 172, 177, 345 A.2d 253 (1975). We find that the evidence of the terms of the surrendered note was clear, cogent and convincing; *Lutz* v. *Gatlin,* 22 Wash. App. 424, 428, 590 P.2d 359 (1979); and that the plaintiff was entitled to pursue this action.

The defendant next claims that the surrender of the note so impaired his right of recourse against the maker as to amount to a discharge of his liability.[4] The defend-

---

[4] This claim is based on General Statutes § 42a-3-606, which provides that: "(1) The holder discharges any party to the instrument to the extent that without such party's consent the holder (a) without express reservation of rights releases or agrees not to sue any person against whom the party has to the knowledge of the holder a right of recourse or agrees to suspend the right to enforce against such person the instrument or collateral or otherwise discharges such person, except that failure or delay in affecting any required presentment, protest or notice of dishonor with respect to any such person does not discharge any party as to whom presentment, protest or notice of dishonor is effective or unnecessary; or (b) unjustifia-

ant maintains that since the plaintiff no longer possesses the note, the plaintiff cannot transfer it to him upon payment of the amount due, and that he therefore cannot become a holder. He asserts that without having the status of holder, in any subsequent action which he might bring on the note, his chance of recovery would be so severely diminished as to completely discharge his liability.

This argument fails to acknowledge the avenue of recourse which was available to the defendant under General Statutes § 42a-3-803. That statute provides that "[w]here a defendant is sued for breach of an obligation for which a third party is answerable . . . he may give the third person written notice of the litigation . . . . If the notice states that the person notified may come in and defend and that if the person notified does not do so he will in any action against him by the person giving the notice be bound by any determination of fact common to the two litigations, then unless after seasonable receipt of the notice the person notified does come in and defend he is so bound." The defendant never followed the procedure set forth in § 42a-3-803. We consequently see no merit in his assertion that the *plaintiff* impaired his right of recourse when *he* could have availed himself of the protection afforded by statute, but did not.

The defendant's final claim of error is that a course of dealing between the parties established a procedure with regard to notice of default which prevailed over the express terms of the instrument and with which the plaintiff failed to comply. The note, in this case,

bly impairs any collateral for the instrument given by or on behalf of the party or any person against whom he has a right of recourse.

"(2) By express reservation of rights against a party with a right of recourse the holder preserves (a) all his rights against such party as of the time when the instrument was originally due; and (b) the right of the party to pay the instrument as of that time; and (c) all rights of such party to recourse against others."

provided that: "Each endorser hereby waives presentment for payment, notice of dishonor, protest and notice of protest and consents to renewal, extension or acceleration of time of payment of this note or any part thereof, all without notice." The defendant argues that a course of dealing over a period of years between the parties had led to the "understanding" that the defendant would be notified immediately should any payment be late. He contends that the plaintiff breached that agreement by not notifying him of the maker's nonpayment until approximately ten months after the original default, and that as a consequence of that breach, he was discharged of liability.

This claim rests upon the assumption that the trial court found that a course of dealing between the parties existed. Although the defendant testified that previous conduct between him and the plaintiff established a course of dealing requiring immediate notice to him of any default in payment, the trial court made no finding in that regard. It stated only that "[s]uch conduct, even if true, did not govern the *particular transaction* which is the subject of this lawsuit . . . ." (Emphasis in original.)

We cannot resort to matters extraneous to the formal record or to facts which have neither been found by the trial court nor admitted in pleadings. *Grunschlag* v. *Ethel Walker School, Inc.,* 189 Conn. 316, 320, 455 A.2d 1332 (1983); *Holmes* v. *Holmes,* 2 Conn. App. 380, 383, 478 A.2d 1046 (1984). References to testimony, even when that testimony is uncontradicted, do not constitute facts. *Holmes* v. *Holmes,* supra. In the absence of a specific finding as to whether any course of dealing had been established with regard to notice, we cannot determine whether the trial court erred in finding that such a course of dealing, if it existed, did not govern the transaction in issue. "[I]f an appellant requires amplification or clarification of the factual

basis of a decision to present his claims of error he should seek a further articulation from the trial court." *Newington v. General Sanitation Service Co.,* 196 Conn. 81, 84, 491 A.2d 363 (1985).

On the basis of what the trial court did find, that is that the defendant was bound by the terms of the note he endorsed, we find no error. In this case, the plain meaning of the express terms of the note was the final word on the rights of the parties. *Sturman v. Socha,* 191 Conn. 1, 12, 463 A.2d 527 (1983); *Dinardo v. Gelormino,* 2 Conn. App. 275, 277, 477 A.2d 694 (1984).[5]

## II

### THE CROSS APPEAL

In its cross appeal, the plaintiff claims that the trial court erred in not awarding it either interest or attorney's fees. We find error.

A promissory note is a contract and is enforceable as such. *Appliances, Inc. v. Yost,* 186 Conn. 673, 677, 443 A.2d 486 (1982). The note in this case expressly provided for the payment of interest upon default. In failing to award interest, the court in effect remade the contract. Interest is allowed on the ground of an express or implied agreement to pay it or as damages for the breach of some contract or the violation of some duty. *Ruscito v. F-Dyne Electronics Co.,* 177 Conn. 149, 163, 411 A.2d 1371 (1979). Whether interest is a proper element of damages is primarily an equitable determination and is a matter which lies within the discretion

[5] Notwithstanding the express waiver provision in the instrument, we note that it is not unreasonable to assume that the defendant, by virtue of his involvement in the maker's corporate affairs, knew that the note could not be paid from corporate funds. Although this argument was not raised by the plaintiff, there is authority for the proposition that notice of dishonor may be deemed unnecessary when the party to be charged has knowledge of facts making it probable that the primary party will not pay. See White & Summers, Uniform Commercial Code § 13-10, pp. 511–12.

of the trial court. *State* v. *Stengel,* 192 Conn. 484, 487, 472 A.2d 350 (1984); *Perl* v. *Case,* 3 Conn. App. 111, 116, 485 A.2d 1331 (1985). Where, on the other hand, the parties have expressly contracted for the payment of interest, the court does not have this latitude. Where the payment of interest is contractually agreed upon, interest is recoverable. *Canfield* v. *Eleventh School District,* 19 Conn. 529, 531 (1849); *Kozienieski* v. *Whitcomb,* 29 Conn. Sup. 110, 116, 273 A.2d 895 (1970).

Similarly, where the terms of the note provide, as they do here, for the payment of attorney's fees incurred, they are also recoverable. *Mayer* v. *Silver,* 1 Conn. App. 162, 164, 468 A.2d 1256 (1984). The language of the contract is determinative. *Burr* v. *Lichtenheim,* 190 Conn. 351, 363-64, 460 A.2d 1290 (1983). "The provision for a reasonable attorney's fee was an integral part of the note and, like any other clause determining the amount due, could not be disregarded. . . . [T]he court had no choice but to allow a reasonable attorney's fee as part of the debt." *Pacelli Bros. Transportation, Inc.* v. *Pacelli,* 189 Conn. 401, 415, 456 A.2d 325 (1983).

The plaintiff's failure to introduce any evidence at trial of the value of a reasonable attorney's fee, moreover, does not justify the court's refusal to make that award. "[C]ourts may rely on their general knowledge of what has occurred at the proceedings before them to supply evidence in support of an award of attorney's fees." *Bizzoco* v. *Chinitz,* 193 Conn. 304, 310, 476 A.2d 572 (1984). Here, as in *Bizzoco* v. *Chinitz,* supra, the "court was in a position to evaluate the complexity of the issues presented and the skill with which counsel had dealt with these issues." Id., 311.

There is no error on the appeal.

There is error on the cross appeal and the case is remanded for further proceedings to determine the

amount of interest due under the note and a proper allowance for attorney's fees and necessary disbursements in collecting the note.

In this opinion the other judges concurred.