[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON PLAINTIFF'S APPLICATION FOR PREJUDGMENT REMEDY
In this action, instituted in December 1988, the plaintiff, The F. Tuthill Son Co., Inc. ("Tuthill Co."), in a two-count complaint, sought money damages from the defendant, McKenzie-Perrier, Inc., d.b.a. Robert Henry's Restaurant ("McKenzie-Perrier"). The first count alleges, inter alia, that Tuthill Co. is a general contractor with a subsidiary doing business as R T Millwork, Inc. ("R T"); that on or about March 21, 1986, it entered into a written contract with McKenzie-Perrier to perform certain work, which work excluded certain millwork. It further alleges that at the defendant's request, Tuthill Co., d.b.a. R T, has performed all the work agreed upon and requested and, that although demand was made, a balance of $75,128.66 remains unpaid and that the contract provides that where payments remain due, the defendant agreed to pay all reasonable costs of collection, court and attorney's fees.
Some time later, on June 21, 1990, the plaintiff filed its application for a prejudgment remedy. A hearing was held on that application at which principals of the plaintiff and defendant testified and some twenty-seven exhibits were admitted into evidence. The hearing, which extended over two days, disclosed, inter alia, serious questions of credibility. CT Page 2325
In Three S Development Co. v. Santoro, 193 Conn. 174, 175-176,474 A.2d 795 (1984), our Supreme Court said:
 "The language of our prejudgment remedy statutes; General Statutes 52-278a et seq.; requires that the court determine `whether or not there is probable cause to sustain the validity of the plaintiff's claim'; General Statutes 52-278d(a); that is to say `probable cause that judgment will be rendered in the matter in favor of the plaintiff.' General Statutes 52-278c(a)(2). `The legal idea of probable cause is a bona fide belief in the existence of the facts essential under the law for the action and such as would warrant a man of ordinary caution, prudence and judgment, under the circumstances, in entertaining it.' Wall v. Toomey, 52 Conn. 35, 36 (1884). Probable cause is a flexible common sense standard. It does not demand that a belief be correct or more likely true than false. Texas v. Brown, 460 U.S. 730, 103 S.Ct. 1535, 75 L.Ed.2d 502 (1983). The hearing in probable cause for the issuance of a prejudgment remedy is not contemplated to be a full scale trial on the merits of the plaintiff's claim. The plaintiff does not have to establish that he will prevail, only that there is probable cause to sustain the validity of the claim. Ledgebrook Condominium Assn., Inc. v. Lusk Corporation, 172 Conn. 577, 584, 376 A.2d 60 (1977). The court's role in such a hearing is to determine probable success by weighing probabilities. Michael Papa Associates v. Julian, 178 Conn. 446, 447, 423 A.2d 105 (1979)."
The trial court's task which "is essentially one of weighing probabilities" is done in the exercise of a broad discretion. William v. Bartlett, 189 Conn. 471, 483, 457 A.2d 290 (1983); Augeri v. C. F. Wooding Co., 173 Conn. 426, 429, 378 A.2d 538
(1977); William M. Raveis Associates, 186 Conn. 329, 333,441 A.2d 200 (1982). While the hearing is not contemplated to be one on the merits, our Supreme Court, drawing on United States Supreme Court case law has said, that in a prejudgment remedy hearing context, "[T]he purpose of a hearing is to satisfy the constitutional due process right that parties whose property rights are to be affected are entitled to be heard[1] at a meaningful time and in a meaningful manner.' [citations omitted]. . . . A hearing permits both sides to be heard. . . ." CT Page 2326 Ledgebrook Condominium Assn. Inc. v. Luck Corporation, 172 Conn. 577,583, 376 A.2d 60 (1977). Such a hearing gives the trial court the opportunity to assess the legal issues that may be raised and to weigh the credibility of at least some of the witnesses and "must evaluate the arguments and evidence produced by both parties." Augeri v. C. F. Wooding Co., supra 429.
The parties initially disagree as to whether there are one or two contracts between them. The defendant maintains that there were two separate contracts, the written contract in Exhibit A and the oral contract for the millwork in the amount of $47,200.00. The plaintiff, however, maintains that "in addition to the work initially contracted for under the scope of the written agreement [Exhibit A], the parties had contemplated that certain millwork items would be undertaken for the renovation of Robert Henry's." It argues that the contemplation of this fact is demonstrated by the written agreement (Exhibit A) of the parties, dated April 21, 1986, under the caption "Items not included." The language, it argues, indicates that the performance of certain millwork was within their contemplation before and at the time of the execution of Exhibit A. There was credible evidence to this effect. At the defendant's request, the plaintiff[2] under date of April 17, 1988, submitted a written estimate on the proposed millwork in the amount of $42,700.00. This $42,700.00 figure which was agreed upon by the parties and in which the designs of James Norcutt of California, the defendant's designer, were necessary, was to be paid by the defendant in addition to the price agreed upon in Exhibit A. For purposes of this proceeding the credible evidence demonstrates that the parties conducted themselves so as to indicate that the millwork agreement was to be considered as controlled by the same general rules as set out in Exhibit A, despite the circumstances that the price and scope of the work was agreed upon shortly after Exhibit A was executed.[3] "In ascertaining intent, [the court] consider[s] not only the language used in the contract but also the circumstances surrounding the making of the contract, the motives of the parties and the purposes which they sought to accomplish." Connecticut Co. v. Division 425, 147 Conn. 608, 616, 164 A.2d 413 (1960). The court cannot accept the defendant's argument that there were two separate contracts.
The plaintiff maintains that the work was substantially completed on or before June 1, 1986: the defendant does not agree and points to work done thereafter by the plaintiff, claiming that the plaintiff delayed performing its agreed work both before and after June 6, 1986. "Substantially . . . is a term of some elasticity: . . . its significance is relative. . . ." Loglisci v. Liquor Control Commission, 123 Conn. 31, 37, 192 A.2d 260 (1937). "It does not indicate a definite, fixed amount of percentage but is an elastic term which must be construed according to the facts CT Page 2327 of the particular case." Harris v. Egan, 135 Conn. 102, 107,60 A.2d 922 (1948). Resolving the conflicting evidence on this aspect, the court agrees that the plaintiff's work was substantially complete on or before June 6, 1986.
Based on the law and the credible evidence, the plaintiff has demonstrated probable cause and it is entitled to a prejudgment remedy.
Turning to the matter of interest on the sum of $75,128.66 claimed to be owing to the plaintiff, the court determines, in this proceeding, that the plaintiff is entitled to claim interest at the legal rate of ten per cent from September 16, 1986 (the date of Exhibit A, plaintiff's final invoice to the defendant). The plaintiff claims interest in the amount allegedly due, i.e., $75,128.66, at the rate of ten per cent, per General Statutes 37-3a, and computes that sum as $29,556.18. That sum is to be included in the prejudgment remedy.
Further, plaintiff claims attorney's fees in the amount of $34,545.78, maintaining that it has a contingent fee arrangement with his counsel to pay one-third of the amount recovered as attorney's fees. There was credible evidence adduced by the plaintiff that this was its fee arrangement with its counsel. The defendant, however, contends that, in the event of the ordering of a prejudgment remedy, that the plaintiff is not entitled to have any sum reflected in it that comprises attorney's fees. It argues that this is so because the plaintiff has not discharged its burden of demonstrating probable cause that this contingent fee arrangement existed. Here the defendant refers to Rules of Professional Conduct 1.5(c)[4] which provides that such an agreement is to be in writing and that there was no such evidence. The plaintiff counters that "the rules are merely guidelines, the sole remedy for the violation of which is action through the Bar Grievance procedure." In any event, the plaintiff also maintains that there wee no information before this court that there is on written fee agreement; that defense counsel never inquired of the plaintiff's witness Chip Tuthill if there was in fact the written fee agreement concerning which he expressly testified to the effect that plaintiff's counsel was to receive one-third of the amount recovered.
Without going at length into the bite of the Code of Professional Responsibility, we note that the "scope" of our Code contains the following language in the preamble: "Violation of a Rule should not give rise to a course of action nor should it create any presumption that a legal duty has been breached. The Rules are designed to provide guidance to lawyers and to provide a structure for regulating conduct through disciplinary proceedings."[5] The court cannot presume that there was no CT Page 2328 written fee agreement, see State v. Jones, 180 Conn. 443, 455,429 A.2d 936 (1980), and, therefore, presumes one exists in this proceeding. Where reasonable attorney's fees are recoverable under a contract clause, there should be an evidentiary showing of reasonableness but "courts may rely on their general knowledge of what has occurred before them to supply evidence in support of an award of attorney's fees." Bizzoco v. Chinitz, 193 Conn. 304,310, 476 A.2d 572 (1984); See Guaranty Bank Trust Co. v. Dowling, 4 Conn. App. 376, 386, 494 A.2d 1216 (1985) (plaintiff's failure to introduce evidence of value of a reasonable attorney's fee does not justify court's refusal to make that award). Courts are called upon to exercise sound discretion in passing upon what constitutes a reasonable attorney's fee and the trier has been said to be in a more advantageous position to evaluate the services of counsel than an appellate court. See Link v. Shelton,186 Conn. 623, 629, 443 A.2d 902 (1982). Having concluded that a prejudgment remedy is to issue in this matter, this court determines that the one-third contingent fee arrangement is to be included therein. That amount is $34,885.00. It is pointed out that the rule in Connecticut is that attorney's fees are not recoverable from an opposing party in the absence of contracted or statutory authorization. See Gino's Pizza of East Hartford, Inc.,193 Conn. 135, 140, 475 A.2d 305 (1984). There is such contractural authority in this case, i.e., Exhibit A, 9.2. In the event that the plaintiff ultimately prevails in this case, attorney's fees will be determined by the trier at that time. The amount of $34,885.00 is to be included in the prejudgment remedy.
Therefore, it is ordered that a prejudgment remedy is granted to the plaintiff to secure the sum of $139,569.84, and it is further ordered that the defendant disclose its assets.
Arthur H. Healey State Trial Referee