[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] POST-TRIAL MEMORANDUM OF DECISION FACTS
On June 4, 1998, the plaintiff, Franklin Credit Management Corporation, filed a one count complaint seeking to foreclose a mortgage on property owned by the defendants, Thomas Nicholas and Ellen Brown. The parties have submitted undisputed proof of the following: On January 27, 1989, the defendants mortgaged a premises located at 214 Lantern Road in Ledyard to the New London Federal Saving and Loan Association as security for a promissory note in the amount of $206,000. On May 1, 1991 and each month thereafter, the defendants defaulted on their obligations under the note.[1]
The New London Federal Savings and Loan Association changed its name to Coastal Savings Bank in 1989. In 1994, Costal Savings Bank failed and was taken over by Resolution Trust Corporation (RTC).
On December 27, 1994, Brown filed for bankruptcy and listed the Coastal Savings Bank debt as a debt to be discharged. On April 14, 1995, the RTC issued an Internal Revenue Service (IRS) form 1099-C (cancellation of debt) to both Brown and Nicholas, notifying them it had discharged their debt under the note on April 14, 1995. Nicholas reported the cancellation of debt as indicated on the IRS form 1099-C in his 1995 income tax returns and incurred tax consequences.
In December 1995, the plaintiff, Franklin Credit Management Corporation, purchased the defendants' loan from the RTC. The RTC CT Page 9447 apprised the plaintiff that all of the relevant documents might not be contained in the loan files and expressly disclaimed all warranties and representations regarding the defendants' mortgage and note prior to their sale.
On November 20, 1998, the plaintiff filed an amended complaint against the defendants seeking a judgment of strict foreclosure. On December 7, 1998, Nicholas and Lantern Hill Associates (Nicholas)[2] filed an answer, numerous special defenses, a setoff and multiple counterclaims.[3] On April 27, 1999, the court, Parker, J., granted the plaintiffs motion to strike all of the counterclaims and the setoff. The court also granted the motion to strike all but one of Nicholas's special defenses.
A bench trial was held on January 17 and January 19, 2001. On February 20, 2001, both parties submitted trial briefs. On April 11, 2001, Nicholas submitted a supplemental brief in support of his position.
 DISCUSSION
In order to establish a prima facie case for the foreclosure of a mortgage, the plaintiff must "prove by a preponderance of the evidence that it [is] the owner of the note and mortgage and that [the defendant has] defaulted on the note." Webster Bank v. Flanagan,51 Conn. App. 733, 750-51, 725 A.2d 975 (1999). In this instance, the plaintiff has submitted uncontroverted evidence that it is the owner of the note and mortgage and that the defendants have defaulted. The plaintiff has, therefore, established its prima facie case.
In a foreclosure action, once the plaintiff has established its prima facie case, the court will render judgment in its favor unless the defendants have established a valid special defense to the action. See Practice Book § 10-50[4]. "At common law, the only defenses to an action of [foreclosure] would have been payment, discharge, release or satisfaction . . . or, if there had never been a valid lien." (Internal quotation marks omitted.) Southbridge Associates, LLC v. Garafolo,53 Conn. App. 11, 15, 728 A.2d 1114, cert. denied, 249 Conn. 919,733 A.2d 229 (1999). Further, "[i]n recognition that a foreclosure action is an equitable proceeding, courts have allowed mistake, accident, fraud, equitable estoppel, CUTPA, laches, breach of the implied covenant of good faith and fair dealing, tender of deed in lieu of foreclosure and a refusal to agree to a favorable sale to a third party to be pleaded as special defenses." Home Loan Investment Bank v. Sebjan, Superior Court, judicial district of Danbury, Docket No. 329603 (July 24, 2000, Moragan,J.). As was previously decided in this case, Parker, J., a special defense of discharge and release also constitutes a valid defense to a CT Page 9448 foreclosure action.
Nicholas's special defense alleges that the note was discharged and released by the RTC, the plaintiffs predecessor in interest and is, therefore, unenforceable. Specifically, Nicholas alleges that the RTC discharged and released his debt when it issued him the IRS form 1099-C in April of 1995. Nicholas argues that because the note was discharged and released, the plaintiff may not seek foreclosure on the premises because the underlying note has been discharged.
General Statutes § 42a-3-604 (a) governs the discharge of a negotiable instrument where full payment is not alleged. It provides: "A person entitled to enforce an instrument, with or without consideration, may discharge the obligation of a party to pay the instrument (i) by an intentional voluntary act, such as surrender of the instrument to the party, destruction, mutilation, or cancellation of the instrument, cancellation or striking out of the party's signature, or the addition of words to the instrument indicating discharge, or (ii) by agreeing not to sue or otherwise renouncing rights against the party by a signed writing." General Statutes § 42a-3-604. On the other hand, "[d]ischarge of the obligation of a party is not effective against a person acquiring the rights of a holder in due course of the instrument without notice of the discharge." General Statutes § 42a-3-601 (b).
The plaintiff has not alleged that it had no notice of the discharge by its predecessor in interest at the time of the purchase of the note and mortgage. It argues, however, that the discharge was a mistake on the part of the RTC. "The cancellation of a negotiable instrument generally has no effect when it is made by mistake." Guaranty Bank Trust Co. v.Dowling, 4 Conn. App. 376, 379, 494 A.2d 1216 (1985). "`Mistake' is not readily susceptible of general definition. To the extent that a comprehensive definition of the term can be fashioned, it has been said that it signifies an erroneous mental conception which influences a person to act or to omit to act." (Internal quotation marks omitted.) Id., 379-80. Whether the creditor intended to cancel a debt is an issue of fact. Id.
The plaintiff argues that the note was not discharged by the issuance of the IRS form 1099-C because General Statutes § 42a-3-604 requires that a debtor prove that the note is intentionally discharged when it has not paid the note in full. The plaintiff argues that, because Nicholas has not proven that the debt was intentionally discharged by the RTC, the debt is still valid and the plaintiff may foreclose on the mortgage secured by the note.[5]
As Nicholas contends, the RTC discharged his debt when it issued the CT Page 9449 IRS form 1099-C because the form constitutes a signed writing sufficient to satisfy the requirements of General Statutes § 42a-3-604. An inspection of the form reveals the amount of the debt which has been discharged. The form also provides RTC's address and federal identification number. These items are sufficient to meet the signature requirement of § 42a-3-604. See Merrill Lynch, Pierce, Fenner Smith, Inc. v. Cole, 189 Conn. 518, 532, 457 A.2d 656 (1983) ("a letterhead or billhead satisfies the signature requirement.") The form, therefore, constitutes prima facie evidence that the RTC intentionally discharged the debt by a signed writing.
Once Nicholas has submitted into evidence a form which satisfied the requirements of General Statutes § 42a-3-604, it becomes the plaintiffs burden to prove that the form was issued in error. See FirstState Bank of Bryson v. Johnson, 585 S.W.2d 917, 919 (Tex.Civ.App. 1979) (having a note marked paid constitutes prima facie evidence that a note is paid and the party challenging the validity of the statement bears the burden of disputing its validity). The plaintiff has presented no evidence which suggests that the IRS form 1099-C was issued in error. The plaintiffs argument that the form was issued solely to discharge Brown's debt after her bankruptcy and that it was not meant to discharge Nicholas's debt fails because the plaintiff has not submitted any evidence which contradicts the text of the form and its apparent discharge of indebtedness for both Brown and Nicholas. Absent any other evidence of RTC's practices and intent the court finds that the plaintiff has not met its burden of showing error. Berchtold v. Maggi,191 Conn. 266, 270-71, 464 A.2d 1 (1983) (where a defendant has met his prima facie case and proved a special defense "the [plaintiff] should fail if [the plaintiff] does nothing more in the way of producing evidence.") The plaintiff has failed to prove that the debt was unintentionally discharged by its predecessor.
The plaintiffs argument that Nicholas bears the burden of proof to show that the debt was intentionally discharged, beyond his submission into evidence of the IRS form 1099-C, also fails under the laws governing contracts. The plaintiff purchased the note from the RTC with a full disclaimer of warrantees and representations regarding the note and its enforceability. The plaintiff knew or should have known that all of the information relevant to the note might not be in the loan files at the time of the sale. See Gibson v. Capano, 241 Conn. 725, 731, 699 A.2d 68
(1997) ("It is established well beyond the need for citation that parties are free to contract for whatever terms on which they may agree. This freedom includes the right to contract for the assumption of known or unknown hazards and risks that may arise as a consequence of the execution of the contract.") When the plaintiff received the note from the RTC, the plaintiff received the benefit of its bargain with the RTC. CT Page 9450 The plaintiff could have ensured the note was enforceable at the time of its purchase and did not do so. It should not now be able to require that the mortgagor prove the RTC intentionally discharged the note. It assumed the risk of the transaction.
Furthermore, it would be inequitable to allow the plaintiff to foreclose on the note, absent proof of error, in view of the consequences the defendants incurred because of the issuance of the IRS form 1099-C and apparent discharged of the debt. Under federal law, a financial institution, like the RTC, must send a copy of an IRS form 1099-C to a debtor when they discharge a debt. See 26 U.S.C. § 6050P;[6]26 C.F.R. § 1.6050P-1T (1995) (removed eff. Dec. 22, 1996, at61 Fed. Reg. 262, 271 ¶ 3).[7] The IRS form 1099-C tells a debtor the amount of the debt which has been discharged and that the debtor must generally report the discharged amount as income in his federal tax return. The form also has a box on it which indicates which, when marked, indicates that a creditor has made corrections to the form. Implicit in the instructions accompanying the form is the threat of monetary fines and penalties if the defendants choose not to declare the discharge of debt as income to the IRS.
Although the form itself provides for an amendment in the event of a mistake on. behalf of a creditor, neither the RTC or the plaintiff issued an amended IRS form 1099-C to Nicholas that allowed Nicholas to file an amended tax return and avoid the tax consequences for the debt the RTC indicated it discharged when it issued Nicholas the form in 1995. It would be inequitable, therefore, to require that Nicholas report the discharge of debt as income on his federal tax return or face the potential tax consequences and hold that the plaintiff may continue to hold him liable on the debt. In a case that is similar to the case at bar, a federal bankruptcy court has similarly held on equitable principles that, absent evidence of a mistaken discharge of debt and the correction of the mistaken discharge by a creditor, it is inequitable to allow a creditor to institute a legal action to collect on a debt after it has issued an IRS form 1099-C to the debtor when the form indicates to the debtor the creditor has discharged its debt See In re Crosby, UnitedStates Bankruptcy Court, Docket No. 00-40270-13 (Bankr. D. KS. January 22, 2001).
In In re Crosby, both of the debtors received an IRS form 1099-C which purported to discharge their debt. Id. After the issuance of these forms, the debtors filed for bankruptcy, the creditor filed a proof of claim, and the debtors objected. Id. The court concluded that the creditor's claims would be disallowed because it would be inequitable to allow the creditor to continue collection activities after the issuance of the IRS form 1099-C, in the absence of the issuance of a corrected form by the CT Page 9451 creditor which indicated the debt had not been discharged, because the issuance of the form subjected the debtor's to tax consequences. Id. In so concluding, the court stated that "[t]he . . . filing of the 1099-C's was analogous to assigning the debts to the IRS, necessarily passing to the IRS any right to collect money from the debtors on account of the debts." Id.[8]
This court similarly concludes that allowing the plaintiff to continue to enforce the note is inequitable. Absent any evidence of mistaken discharge or any valid defense, the court finds that the debt has been discharged against the defendants pursuant to the terms of the IRS form 1099-C.
The original note entered into on January 27, 1999, was in the amount of $206,000. The principle on the note was decreased to $202,947 by payments made by the defendants through April 1, 1991. The 1099-C form admitted into evidence indicates that on April 14, 1995, $288,822 of debt was discharged. The form indicates that $61,025 of the amount discharged was interest. The remaining amount of the debt discharged, roughly $24,850, must therefore account for penalty's, fines, and other miscellaneous amounts owing to the RTC at the time of the discharge.
Our Supreme Court has held that when the underlying note has been discharged the mortgage securing the note cannot be foreclosed. HartfordNational Bank Trust Co. v. Kotkin, 185 Conn. 579, 581, 441 A.2d 593
(1981). As this court has determined the underlying debt has been discharged, the court holds that the mortgage may not be foreclosed.
Judgment is hereby entered in favor of the defendants and the foreclosure action is dismissed.
 ___________________ D. MICHAEL HURLEY JUDGE TRIAL REFEREE