SILICON VALLEY BANK *v.* MIRACLE FAITH WORLD
OUTREACH, INC.
(AC 33898)

Beach, Sheldon and Borden, Js.

Argued October 16, 2012—officially released February 19, 2013

*David E. Rosenberg*, for the appellant (defendant).

*Elizabeth Slater Massey*, with whom was *Linda L. Morkan*, for the appellee (plaintiff).

*Opinion*

BEACH, J. The issues presented in this appeal from a judgment on a promissory note and foreclosure of a mortgage relate to matters entrusted to the sound discretion of the trial court. The defendant, Miracle Faith World Outreach, Inc., claims that the court abused its discretion by (1) admitting a copy of the promissory note and admitting screenshots detailing the transaction history of the subject loan, and (2) permitting the plaintiff, Silicon Valley Bank, to open its case-in-chief to offer evidence of its attorney's fees. We affirm the judgment of the court.

Many of the facts relevant to the disposition of this appeal were articulated in the court's memorandum of decision. "The plaintiff . . . is a California banking corporation with its principal place of business in Santa Clara, California. The defendant . . . is a Connecticut

religious corporation . . . [and] is the owner of a certain parcel of land with a building, structures, and improvements thereon, located at 754 Main Street, Monroe . . . .

"The defendant executed and delivered to [the] plaintiff a certain [p]romissory [n]ote [s]ecured [b]y [a] [m]ortgage dated May 14, 2002, in the original principal amount of one million nine hundred sixty-two thousand dollars ($1,962,000) . . . . In order to secure repayment of the promissory note, also on or about May 14, 2002, the defendant duly made, executed and delivered to the plaintiff an [a]mended and [r]estated [m]ortgage, [a]ssignment of [l]eases and [r]ents and [s]ecurity [a]greement dated May 14, 2002. The plaintiff and [the] defendant also entered into a [t]erm [l]oan [a]greement dated May 14, 2002. The term on the promissory note is for a period of ten years, maturing on May 14, 2012. On or about April 15, 2002, the plaintiff filed in the Connecticut [s]ecretary of [the] [s]tate's [o]ffice a UCC [f]inancing [s]tatement listing the plaintiff as the secured party and the defendant as the debtor. Thereafter, on or about August 27, 2008, the mortgage was amended pursuant to a modification agreement entered into by the defendant and the plaintiff. The plaintiff is the owner and holder of the promissory note, the term loan agreement, the mortgage as amended by the modification agreement and the original financing statement as amended by the amended financing statement."

Following a period of reduced payments permitted pursuant to the loan modification agreement, the defendant failed to pay the full amounts due under the terms of the note between December 1, 2008, and May 1, 2009. "On May 6, 2009, the plaintiff sent a notice of default to the defendant notifying it that it was in default under the note, mortgage, and other loan documents because of its failure to pay all amounts due as provided in the note."

On or about September 15, 2009, the plaintiff commenced this action against the defendant seeking judgment on the promissory note and foreclosure of the mortgage. A three day trial to the court, *Hartmere, J.*, began on December 8, 2010. Eugene Wong, an associate at Silicon Valley Bank, testified for the plaintiff. He produced a copy of the promissory note because, as he explained, he was unable to locate the original, despite efforts to find it at several of the plaintiff's offices and at a third party storage facility. The defendant objected to the admission of the copy of the note on the basis that the plaintiff had failed to meet the burden of proof required to admit a lost instrument.[1] See General Statutes § 42a-3-309. The court overruled the objection and found that the plaintiff had sustained its burden by showing that the original note was lost and that the copy produced was authentic.

Wong also testified regarding the amount of the debt owed to the plaintiff. To demonstrate the basis for Wong's calculations, the plaintiff introduced screenshots that captured its records of the defendant's loan activity from May 31, 2002, to the time of trial. The loan activity was recorded in an accounting program called Silicon Valley Bank Online (SVB Online). Wong testified that the loan records depicted in the screenshots were updated at the time each payment or charge was assessed against the loan, that it was the plaintiff's regular course of business to keep such records, and that the records were made in the regular course of the plaintiff's business. Although Wong was not the employee who entered the information into the accounting program, he testified that he reviewed the entries to make sure that they were accurate and applied correctly as between principal and interest. The

---

[1] Counsel for the defendant also stated that the defendant is "not denying that [it] did sign the note." In fact, the defendant had included a copy of the note as an exhibit to its amended answer and special defenses.

defendant objected to the admission of the screenshots on the ground that the plaintiff had failed to establish the elements of the business records exception. See Conn. Code Evid. § 8-4. Specifically, the defendant took issue with the fact that Wong had not personally entered the loan repayment data into the SVB Online system. The defendant's objection was overruled.

Additionally, the plaintiff introduced a spreadsheet created by Wong that summarized the transactions related to the subject loan. Wong testified that he had created the spreadsheet with information he had obtained from SVB Online. The spreadsheet was admitted without objection. Referring to the spreadsheet, Wong went on to testify regarding the outstanding principal balance, the amount of interest that had accrued and late fees that were assessed.

Also during Wong's testimony, the plaintiff sought to introduce invoices for legal expenses that the plaintiff had incurred during the course of the foreclosure litigation.[2] The defendant's objection that the invoices were inadmissible hearsay was sustained by the court. At the close of the plaintiff's case-in-chief, without a proper witness through whom it could introduce documentary evidence of its legal expenses, counsel for the plaintiff stated that "there is no claim for attorney's fees."

After the defendant had rested, the court permitted the plaintiff, over the defendant's objection, to open its case-in-chief to offer evidence of its attorney's fees. The court noted that, "ordinarily motions to open direct [to present evidence that] should've been presented during the case-in-chief are not viewed favorably. On the other hand, the facts here are somewhat unique in that the

---

[2] The court found that pursuant to the note and related loan documents, the defendant had agreed to pay all costs of collection incurred by the plaintiff including, but not limited to, attorney's fees and related costs.

original attorney didn't appear to be available . . . ."[3] The court therefore allowed the plaintiff to open its case-in-chief for the purpose of establishing its attorney's fees. Accordingly, on February 25, 2011, Judge Lisa Kelly Morgan, who became a Superior Court judge during the pendency of the case, testified regarding her past experience in commercial foreclosures, the scope of her work on the present foreclosure action, the number of hours she dedicated to the case, and the manner in which her bills were calculated. Gina Varano, whose firm represented the plaintiff after Judge Morgan was appointed a judge, similarly testified about her work on the case, which commenced when trial was imminent. In its memorandum of decision, the court found that the fees of the two attorneys were "reasonable under all of the circumstances."

The court issued its memorandum of decision, finding in favor of the plaintiff, and rendered a judgment of foreclosure by sale. The defendant's motion to reargue was denied by the court. This appeal followed.

I

The defendant's first two claims on appeal pertain to evidentiary rulings. Our standard of review, therefore, is abuse of discretion. "The trial court's ruling on evidentiary matters will be overturned only upon a showing of a clear abuse of the court's discretion. . . . [E]videntiary rulings will be overturned on appeal only where there was an abuse of discretion and a showing by the defendant of substantial prejudice or injustice." (Internal quotation marks omitted.) *Stokes* v. *Norwich Taxi, LLC*, 289 Conn. 465, 489, 958 A.2d 1195 (2008).

---

[3] Attorney Lisa Kelly Morgan had represented the plaintiff before being confirmed as a judge of the Superior Court on November 5, 2010. During its case-in-chief, the plaintiff was apparently unsure about the propriety of calling a judge as a witness.

## A

The defendant first claims that the court abused its discretion by determining that the plaintiff was the owner and holder of the note, despite the fact that the original note was lost. We disagree.

"A bill or note is not a debt; it is only primary evidence of a debt; and where this is lost, impaired or destroyed bona fide, it may be supplied by secondary evidence. . . . The loss of a bill or note alters not the rights of the owner, but merely renders secondary evidence necessary and proper." (Citation omitted; internal quotation marks omitted.) *New England Savings Bank* v. *Bedford Realty Corp.*, 238 Conn. 745, 760, 680 A.2d 301 (1996); see also 1 D. Caron & G. Milne, Connecticut Foreclosures (5th Ed. 2011) § 6-2:1.3, p. 315 ("[t]he plaintiff's ability to prosecute an action despite the fact that the original mortgage note and/or deed are lost is well established, although these circumstances do impose additional burdens on the plaintiff").[4]

"The Uniform Commercial Code . . . addresses situations . . . where the instrument sought to be enforced is unavailable, by creating an exception to the general rule that one must hold an instrument in order to enforce its payment." *Guaranty Bank & Trust Co.* v. *Dowling*, 4 Conn. App. 376, 381, 494 A.2d 1216, cert. denied, 197 Conn. 808, 499 A.2d 58 (1985). Section 42a-3-309 (a) provides: "A person not in possession of an instrument is entitled to enforce the instrument if (i) the person was in possession of the instrument and entitled to enforce it when loss of possession occurred, (ii) the loss of possession was not the result of a transfer by the person or a lawful seizure, and (iii) the person cannot reasonably obtain possession of the instrument

---

[4] Pursuant to General Statutes § 42a-3-301, a person not in possession of an instrument is entitled to enforce the instrument in accordance with General Statutes §§ 42a-3-309 or 42a-3-418 (d).

because the instrument was destroyed, its whereabouts cannot be determined, or it is in the wrongful possession of an unknown person or a person that cannot be found or is not amenable to service of process."

Here, the court found that the plaintiff had sustained its burden of showing that the note was lost and that the copy it produced was authentic. Despite the defendant's contention to the contrary, there is no specific requirement under § 42a-3-309 that the proponent of a lost note produce an affidavit detailing how the instrument was lost. To the contrary, "[t]he special problems and burdens of proof imposed on a plaintiff seeking to enforce lost instruments strongly suggest that the debt, including the circumstances under which the documents were lost and the attempts to find them, should be proven by testimony, and not merely by an affidavit." 1 D. Caron & G. Milne, supra, § 6-2:1.3, p. 316.

The plaintiff established that it had entered into a transaction including a promissory note secured by a mortgage, a term loan agreement, and a mortgage with the defendant. Wong testified that ordinarily the original note would have been kept in the plaintiff's California headquarters. After a period of time, it would have been sent to a third party storage facility. Wong testified that he checked "all the places where [the note] could possibly be," but he was unable to locate it. Although the original was lost, a copy of the note had been kept in the plaintiff's credit file for the subject loan. Although the defendant takes issue with the admission of the copy of the note, it does not claim that the copy was in any way inaccurate. See *Guaranty Bank & Trust Co.* v. *Dowling*, supra, 4 Conn. App. 382 ("[a]lthough the defendant objected to the introduction of the photocopy, he offered no evidence that it was not an accurate

copy nor . . . did he dispute its terms").[5] The court, therefore, did not abuse its discretion in admitting a copy of the note.

## B

The defendant next claims that the trial court abused its discretion by admitting, pursuant to the business record exception to the hearsay rule, the screenshots that captured the transaction history of the subject loan. The defendant's primary contention is that our Supreme Court's holding in *New England Savings Bank* v. *Bedford Realty Corp.*, supra, 238 Conn. 745, precluded Wong's testimony regarding the amount of the debt because he had only limited knowledge of the loan.[6] The defendant also seems to argue, as it did at trial, that the fact that Wong did not create the records depicted in the screenshots precluded application of the business record exception. We disagree.

The defendant's reliance on *New England Savings Bank* is misplaced. In *New England Savings Bank*, our Supreme Court held that the trial court had improperly admitted the testimony of a bank employee regarding the amount of the outstanding debt. Id., 757–58. The witness "had not closed or serviced the note and mortgage, and . . . [the plaintiff] had employed a subservicer to make collections." Id., 758. Thus, the witness' testimony regarding the amount of the debt was based

[5] The defendant mistakenly asserts that the plaintiff had "transferred" the note to its third party storage facility. Storing an instrument with a third party does not make the storage company the "holder" of the instrument except, of course, in the literal, physical sense of the word.

[6] The defendant repeatedly mischaracterizes Wong's involvement with the administration of the subject loan. The defendant asserts, for example, that Wong "testified that he did not have any access or input into the account reporting in the present action . . . ." In fact, Wong testified that he was familiar with the subject loan documents and that, although he did not input the transactions into SVB Online, he had reviewed the payment information to make sure it was entered accurately and applied correctly to principal and interest.

"exclusively on what she had gleaned from the file . . . and from . . . computer records." Id., 757. What was problematic about the testimony, the court reasoned, was that the plaintiff had not offered into evidence the documents on which the witness relied. Id., 758; see *Central Bank* v. *Colonial Romanelli Associates*, 38 Conn. App. 575, 580, 662 A.2d 157 (1995) ("Because the contents of the computer records were at issue, the records themselves were the best evidence of the amount of the debt and the interest calculation. Accordingly, they should have been admitted into evidence before [a witness] was permitted to testify concerning their contents."). Because the documents that Wong relied on to explain the total outstanding debt were admitted here, *New England Savings Bank* is clearly distinguishable.

The defendant also asserts that the screenshots were inadmissible because of Wong's "limited" role in the administration of the loan, or because other employees more involved with the loan were available to testify. This claim merits little discussion. As the Connecticut Code of Evidence makes explicitly clear, a business record is "not . . . rendered inadmissible by (1) a party's failure to produce as witnesses the person or persons who made the writing or record . . . or (2) the party's failure to show that such persons are unavailable as witnesses. . . ." (Internal quotation marks omitted.) Conn. Code Evid. § 8-4 (b).

It is also clear that Wong was competent to testify regarding the screenshots. The party proffering a document under the business records exception must present a witness who can establish the foundational requirements of the exception. See *Berkeley Federal Bank & Trust, FSB* v. *Ogalin*, 48 Conn. App. 205, 208, 708 A.2d 620, cert. denied, 244 Conn. 933, 711 A.2d 726 (1998). Regarding electronic documents, our Supreme Court recognized in *American Oil Co.* v. *Valenti*, 179

Conn. 349, 360–61, 426 A.2d 305 (1979), that "[w]hat is crucial is not the witness' job description but rather his knowledgeability about the basic elements that afford reliability to computer printouts. . . . The witness must be a person who is familiar with computerized records not only as a user but also as someone with some working acquaintance with the methods by which such records are made." (Citation omitted.) Wong certainly exceeded this threshold. He testified that he was responsible for overseeing the subject loan, that he was familiar with the relevant loan documents, and that he was fluent with SVB Online, having used the program for two and a half years. Thus, the court properly admitted the screenshots.[7]

## II

The defendant finally claims that the court abused its discretion by permitting the plaintiff to open its case-in-chief for the purpose of presenting evidence related to its attorney's fees. We are not persuaded.

"Whether or not a trial court will permit further evidence to be offered after the close of testimony in the case is a matter resting within its discretion. . . . In the ordinary situation where a trial court feels that, by inadvertence or mistake, there has been a failure to introduce available evidence upon a material issue in the case of such a nature that in its absence there is serious danger of a miscarriage of justice, it may properly permit that evidence to be introduced at any time before the case has been decided." (Citations omitted.) *Bortner* v. *Woodbridge*, 250 Conn. 241, 265, 736 A.2d 104 (1999).

---

[7] It is worth noting that the defendant did not object at trial to the admission of the spreadsheet that Wong had created, which also delineated the amount of the debt. Nor does the defendant claim on appeal that the spreadsheet was improperly admitted.

The defendant's claim fails for several reasons. First, the court reasonably found that the plaintiff's failure to present evidence regarding attorney's fees was caused by "inadvertence or mistake," in that there was confusion regarding whether the plaintiff's initial counsel, Morgan, was available to testify regarding her fees. Moreover, the court reasonably could have concluded that it would have been unfair to preclude recovery of attorney's fees when the defendant had agreed to pay all such costs under the terms of the loan and related documents. Finally, the defendant does not even attempt to describe how opening the case was prejudicial, except for the fact that it will be required to pay costs to which it had contractually obligated itself. See *DiLieto* v. *County Obstetrics & Gynecology Group, P.C.*, 297 Conn. 105, 134 n.35, 998 A.2d 730 (2010) (granting of motion to reopen evidence appropriate where "defendants did not alert the trial court to any possible prejudice that might arise from the granting of the motion"). As the hearing on attorney's fees took place two months after the motion to open was granted, certainly the defendant cannot claim that it did not have adequate time to prepare to contest the amount of the fees.[8]

The judgment is affirmed.

In this opinion the other judges concurred.

---

[8] On appeal, the defendant also challenges the reasonableness of the fees awarded, stating that, "upon information and belief," the $325 hourly rate charged by the plaintiff's attorneys was "approximately $100 [per] hour more than what is allowed in foreclosure proceedings." The defendant complains that at trial, the court focused "solely on the services alleged to have been rendered by [the plaintiff's attorneys], and paid no mind to the excessive hourly rates charged." The defendant, however, failed to raise the precise issue of the reasonableness of the hourly rates at trial. As such, this claim was not preserved for appellate review. "The court shall not be bound to consider a claim unless it was distinctly raised at the trial or arose subsequent to the trial. . . . The requirement that [a] claim be raised distinctly means that it must be so stated as to bring to the attention of the court the *precise matter* on which its decision is being asked." (Emphasis added; internal quotation marks omitted.) *State* v. *Colon*, 82 Conn. App. 658, 659, 847 A.2d 315, cert. denied, 269 Conn. 915, 852 A.2d 745 (2004).