JEFFORY STOKES *v.* NORWICH TAXI, LLC, ET AL.
(SC 18059)

Rogers, C. J., and Palmer, Vertefeuille, Zarella and Schaller, Js.

466

Argued March 13—officially released November 11, 2008

*Clifford J. Grandjean,* for the appellants-cross appellees (defendants).

*Marc P. Mercier,* for the appellee-cross appellant (plaintiff).

*Opinion*

SCHALLER, J. This amended appeal and cross appeal[1] require us to consider, inter alia, under what circumstances, in a case in which it already has been

---

[1] The defendants appealed and the plaintiff cross appealed from the judgment of the trial court to the Appellate Court. The defendants subsequently filed the amended appeal, to add a claim appealing from the judgment of

determined that an employee is entitled to unpaid overtime pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201 et seq. (act), the overtime premium rate may be calculated based on the fluctuating workweek method, as set forth in § 778.114 of title 29 of the Code of Federal Regulations.[2] The defendants, Norwich Taxi, LLC (Nor-

the trial court, rendered after the defendants had filed the original appeal, granting the plaintiff's supplemental request for additional attorney's fees. We transferred the appeals to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

[2] Section 778.114 of title 29 of the Code of Federal Regulations provides: "(a) An employee employed on a salary basis may have hours of work which fluctuate from week to week and the salary may be paid him pursuant to an understanding with his employer that he will receive such fixed amount as straight time pay for whatever hours he is called upon to work in a workweek, whether few or many. Where there is a clear mutual understanding of the parties that the fixed salary is compensation (apart from overtime premiums) for the hours worked each workweek, whatever their number, rather than for working 40 hours or some other fixed weekly work period, such a salary arrangement is permitted by the [a]ct if the amount of the salary is sufficient to provide compensation to the employee at a rate not less than the applicable minimum wage rate for every hour worked in those workweeks in which the number of hours he works is greatest, and if he receives extra compensation, in addition to such salary, for all overtime hours worked at a rate not less than one-half his regular rate of pay. Since the salary in such a situation is intended to compensate the employee at straight time rates for whatever hours are worked in the workweek, the regular rate of the employee will vary from week to week and is determined by dividing the number of hours worked in the workweek into the amount of the salary to obtain the applicable hourly rate for the week. Payment for overtime hours at one-half such rate in addition to the salary satisfies the overtime pay requirement because such hours have already been compensated at the straight time regular rate, under the salary arrangement.

"(b) The application of the principles above stated may be illustrated by the case of an employee whose hours of work do not customarily follow a regular schedule but vary from week to week, whose overtime work is never in excess of 50 hours in a workweek, and whose salary of $250 a week is paid with the understanding that it constitutes his compensation, except for overtime premiums, for whatever hours are worked in the workweek. If during the course of 4 weeks this employee works 40, 44, 50, and 48 hours, his regular hourly rate of pay in each of these weeks is approximately $6.25, $5.68, $5, and $5.21, respectively. Since the employee has already received straight-time compensation on a salary basis for all hours worked, only additional half-time pay is due. For the first week the employee is entitled to be paid $250; for the second week $261.36 ($250 plus 4 hours at $2.84, or 40 hours at $5.68 plus 4 hours at $8.52); for the third week $275 ($250 plus 10 hours at $2.50, or 40 hours at $5 plus 10 hours at $7.50); for

wich Taxi), Susan E. Knowles and Harry F. Knowles, Jr., appeal from the judgment of the trial court, following a jury trial, rendered in favor of the plaintiff, Jeffory Stokes. In their statement of the issues on appeal, the defendants list fourteen separate claims, three of which have not been preserved. Accordingly, we address the remaining eleven claims.[3] The defendants claim that the

the fourth week approximately $270.88 ($250 plus 8 hours at $2.61 or 40 hours at $5.21 plus 8 hours at $7.82).

"(c) The 'fluctuating workweek' method of overtime payment may not be used unless the salary is sufficiently large to assure that no workweek will be worked in which the employee's average hourly earnings from the salary fall below the minimum hourly wage rate applicable under the [a]ct, and unless the employee clearly understands that the salary covers whatever hours the job may demand in a particular workweek and the employer pays the salary even though the workweek is one in which a full schedule of hours is not worked. Typically, such salaries are paid to employees who do not customarily work a regular schedule of hours and are in amounts agreed on by the parties as adequate straight-time compensation for long workweeks as well as short ones, under the circumstances of the employment as a whole. Where all the legal prerequisites for use of the 'fluctuating workweek' method of overtime payment are present, the [a]ct, in requiring that 'not less than' the prescribed premium of 50 percent for overtime hours worked be paid, does not prohibit paying more. On the other hand, where all the facts indicate that an employee is being paid for his overtime hours at a rate no greater than that which he receives for nonovertime hours, compliance with the [a]ct cannot be rested on any application of the fluctuating workweek overtime formula."

[3] The defendants failed to preserve three claims presented on appeal. Specifically, the defendants claimed that the trial court improperly: (1) instructed the jury that a clear mutual understanding between an employer and employee was a prerequisite to the applicability of the fluctuating workweek method; (2) instructed the jury that the defendants' incorrect classification of an employee as exempt precluded application of the fluctuating workweek method; and (3) implied that there must be fluctuation in regular work hours for the fluctuating workweek method to apply.

Practice Book § 16-20 provides: "An appellate court shall not be bound to consider error as to the giving of, or the failure to give, an instruction unless the matter is covered by a written request to charge or exception has been taken by the party appealing immediately after the charge is delivered. Counsel taking the exception shall state distinctly the matter objected to and the ground of objection. The exception shall be taken out of the hearing of the jury." See also *National Publishing Co.* v. *Hartford Fire Ins. Co.*, 287 Conn. 664, 666 n.2, 949 A.2d 1203 (2008) ("[i]t is well established that a party may preserve for appeal a claim that an instruction

trial court: (1) improperly stated in its instructions to the jury that the fluctuating workweek method of calculating the amount of overtime to which an employee is entitled is inapplicable when an employer has taken deductions from an employee's base salary for any reason; (2) improperly structured the interrogatories in such a way that the jury was precluded from applying the fluctuating workweek method if it determined that the defendants had taken such deductions from the plaintiff's base salary; (3) improperly characterized the fluctuating workweek method as an exception rather than an alternate method of calculating the amount of overtime due to an employee, thus improperly placing the burden on the defendants to demonstrate the applicability of the fluctuating workweek method; (4) improperly instructed the jury that contemporaneous payment of overtime is a necessary prerequisite for the applicability of the fluctuating workweek method; (5) improperly refused to provide the jury with instructions for calculating overtime compensation utilizing the fluctuating workweek method; (6) improperly concluded that the fluctuating workweek method did not apply

was defective either by: [1] submitting a written request to charge the covering matter; or [2] taking an exception to the charge as given"). Regarding the first claim, as the trial court specifically noted, the defendants did not submit this issue as part of their proposed jury instructions, and did not take exception to the portion of the court's instructions that made reference to the requirement of a clear mutual understanding between the employer and the employee. As to the second claim, the defendants made no mention of the issue in their request to charge or in any exception, and the court did not make this statement in its instructions to the jury. Finally, as to the third claim, the defendants' proposed jury instructions set forth the very same statement of the law that the defendants now claim constituted an improper instruction. The defendants' proposed jury instructions provide in relevant part: "If you find . . . that [the plaintiff] worked a fluctuating workweek for the same base pay" then the jury may apply the fluctuating workweek method in calculating the amount of overtime pay due to the plaintiff. The court's charge was consistent with the defendants' request to charge, and the defendants did not take an exception to the charge on this basis. Accordingly, because these three claims were not preserved, we decline to review them.

to the plaintiff's state law claims, brought pursuant to General Statutes §§ 31-68[4] and 31-72;[5] (7) committed plain error in failing to conclude that the act preempts the application of §§ 31-68 and 31-72; (8) improperly refused to allow the defendants to cross-examine the

[4] General Statutes § 31-68 (a) provides: "If any employee is paid by his employer less than the minimum fair wage or overtime wage to which he is entitled under sections 31-58, 31-59 and 31-60 or by virtue of a minimum fair wage order he may recover, in a civil action, twice the full amount of such minimum wage less any amount actually paid to him by the employer, with costs and such reasonable attorney's fees as may be allowed by the court, and any agreement between him and his employer to work for less than such minimum fair wage or overtime wage shall be no defense to such action. The commissioner may collect the full amount of unpaid minimum fair wages or unpaid overtime wages to which an employee is entitled under said sections or order, as well as interest calculated in accordance with the provisions of section 31-265 from the date the wages should have been received, had they been paid in a timely manner. In addition, the commissioner may bring any legal action necessary to recover twice the full amount of the unpaid minimum fair wages or unpaid overtime wages to which the employee is entitled under said sections or under an order, and the employer shall be required to pay the costs and such reasonable attorney's fees as may be allowed by the court. The commissioner shall distribute any wages or interest collected pursuant to this section to the employee or in accordance with the provisions of subsection (b) of this section."

[5] General Statutes § 31-72 provides: "When any employer fails to pay an employee wages in accordance with the provisions of sections 31-71a to 31-71i, inclusive, or fails to compensate an employee in accordance with section 31-76k or where an employee or a labor organization representing an employee institutes an action to enforce an arbitration award which requires an employer to make an employee whole or to make payments to an employee welfare fund, such employee or labor organization may recover, in a civil action, twice the full amount of such wages, with costs and such reasonable attorney's fees as may be allowed by the court, and any agreement between him and his employer for payment of wages other than as specified in said sections shall be no defense to such action. The Labor Commissioner may collect the full amount of any such unpaid wages, payments due to an employee welfare fund or such arbitration award, as well as interest calculated in accordance with the provisions of section 31-265 from the date the wages or payment should have been received, had payment been made in a timely manner. In addition, the Labor Commissioner may bring any legal action necessary to recover twice the full amount of unpaid wages, payments due to an employee welfare fund or arbitration award, and the employer shall be required to pay the costs and such reasonable attorney's fees as may be allowed by the court. The commissioner shall distribute any wages,

plaintiff as to his hours of work during the pay period prior to the plaintiff becoming a salaried employee; (9) abused its discretion in precluding the defendants from admitting into evidence an alternate calculation of hours that the plaintiff had worked; (10) improperly precluded the defendants from cross-examining the plaintiff as to his employment status after leaving the defendants' company; and (11) improperly awarded the plaintiff supplemental attorney's fees.

The plaintiff has raised one issue on cross appeal, claiming that the trial court improperly based its calculation of the reasonable hourly rate for the plaintiff's counsel on the local rate in the New London judicial district rather than relying on a statewide standard, or that the court improperly failed to award attorney's fees pursuant to the current hourly rate of the plaintiff's counsel. We affirm the judgment of the trial court.[6]

The jury reasonably could have found the following facts. At all relevant times, Norwich Taxi maintained a garage facility in the town of Franklin, and operated a taxicab business consisting of a fleet of approximately thirty taxicabs. Also at all relevant times, Harry Knowles was the owner, manager and sole member of the limited liability company, and Susan Knowles owned the property occupied by Norwich Taxi, and performed bookkeeping services for Norwich Taxi.[7]

The plaintiff was employed by the defendants beginning in 1995 and served as the defendants' only full-

arbitration awards or payments due to an employee welfare fund collected pursuant to this section to the appropriate person."

[6] Because we affirm the judgment of the trial court, it is unnecessary for us to address the plaintiff's alternate ground for affirmance, namely, that the evidence presented at trial did not warrant an instruction on the fluctuating workweek method.

[7] Although the defendants claimed at trial that Susan Knowles was not individually liable to the plaintiff for the unpaid overtime, they do not challenge the jury's finding to the contrary on appeal.

time mechanic from 1997 to September 7, 2004, when he was terminated. The plaintiff was responsible for preparing, repairing and maintaining Norwich Taxi's fleet of taxicabs and other business vehicles, including manually preparing the vehicles for use as taxicabs by installing necessary equipment such as radios and meters, tearing down taxicabs taken out of service, inspecting vehicles for cleanliness and safety, ordering and picking up parts, diagnosing and completing repairs and routine maintenance, picking up taxicabs that were broken down on the road, delivering backup taxicabs to stranded drivers and keeping vehicle maintenance logs. The plaintiff also maintained and repaired the personal vehicles of Harry Knowles and Susan Knowles, as well as, upon their request, the vehicles of their family members and friends. He also performed maintenance on the Norwich Taxi facility, and on residences owned by Susan Knowles, including plumbing, furnace repairs, snow removal, lawn mowing and raking, waste disposal, painting and carpentry.

The plaintiff regularly worked Monday through Saturday from 8 a.m. to 8 p.m., and also occasionally worked on Sundays. If snow plowing was required, the plaintiff's workday began prior to 8 a.m. As a result, the plaintiff's weekly hours regularly exceeded seventy hours. The defendants did not keep daily or weekly records of the hours or days that the plaintiff worked.

In September, 1999, the defendants changed the plaintiff's job title from "mechanic" to "manager of the garage." At the same time, the defendants also changed his classification from nonexempt to exempt, and changed his pay structure from hourly to salaried.[8] After changing the plaintiff's classification to exempt status,

[8] In its answers to the interrogatories, the jury determined that the defendants had not met their burden of proving that the plaintiff properly had been classified as an exempt employee.

the defendants did not compensate him for any overtime hours that he worked, but they required him to make up any hours he missed during a pay period, in order for him to receive his full salary for that pay period. For example, in July, 2003, in order to receive his usual salary, the plaintiff was required to make up the work hours he had missed due to a hospital stay, and, on another occasion, due to his attendance at his grandmother's funeral. He was also required to make up any time missed due to medical appointments.

The events leading up to the plaintiff's termination began on August 14, 2004, when the plaintiff suffered a work-related back injury. Although the plaintiff did not immediately miss any time from work due to the injury, the defendants divided his weekly salary by forty hours and reduced his pay that week by one eight hour day of pay. The defendants similarly reduced the plaintiff's wages when he missed work in the following weeks for appointments with his physicians. The plaintiff was terminated on September 7, 2004.

The record also reveals the following relevant procedural history. The plaintiff brought this action on October 12, 2004. In his amended complaint, the plaintiff sought recovery for unpaid overtime wages pursuant to the act and §§ 31-68 and 31-72. Following a trial, the jury rendered a verdict for the plaintiff under both the federal and state statutory provisions, awarding him $85,257.90 and $56,026.62, respectively. The trial court denied the defendants' motion to set aside the verdict as to damages only, and for remittitur. The court rejected the defendants' contention that the jury interrogatories were structured improperly because the verdict sheet instructed the jury that if it found that the defendants reduced the plaintiff's salary during any relevant time period when he missed work—a finding that the jury did make—the jury was to skip interrogatory nine on the verdict sheet, which would have required

the jury to determine whether the defendants were entitled to utilize the fluctuating workweek method for calculating the plaintiff's overtime pay.

Because the jury also found that the defendants had acted wilfully in failing to compensate the plaintiff for overtime hours, the trial court subsequently granted the plaintiff's motion for liquidated and double damages, awarding him an additional $85,257.90 and $56,026.62 under federal and state statutory provisions, respectively.[9] The court also awarded the plaintiff $126,414.80 in attorney's fees and costs. The court subsequently granted the plaintiff's supplemental motion for attorney's fees and costs, awarding him an additional $13,275 for fees and costs in connection with posttrial motions. This amended appeal and cross appeal followed. See footnote 1 of this opinion.

I

The resolution of the first five issues presented by the defendants turns on the answer to one question—whether the fluctuating workweek method was applicable under the facts of the present case to calculate the amount of overtime pay due to the plaintiff.[10] All of the

---

[9] Section 216 (b) of title 29 of the United States Code provides in relevant part: "Any employer who violates the provisions of [29 U.S.C. §§ 206 or 207] shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages. . . ."

Both §§ 31-68 (a) and 31-72 provide that an employee "may recover, in a civil action, twice the full amount of such [minimum wage] . . . ."

[10] Specifically, the question of whether the fluctuating workweek method was available as a method of calculating the amount of overtime that the defendants owed to the plaintiff is inextricably intertwined with the defendants' claims that the trial court: (1) improperly (a) stated in its instructions to the jury that the fluctuating workweek method of calculating the amount of overtime to which an employee is entitled is inapplicable when an employer has taken deductions from an employee's base salary for any reason, and (b) structured the interrogatories in such a way that the jury was precluded from applying the fluctuating workweek method if it determined that the defendants had taken such deductions from the plaintiff's base salary; (2) improperly characterized the fluctuating workweek method

defendants' challenges to the trial court's jury instructions and interrogatories relate to this issue. Because we conclude that the defendants failed to establish one of the conditions that would have entitled the jury to apply the fluctuating workweek method in calculating the amount of overtime compensation due to the plaintiff, namely, that the defendants paid the plaintiff a fixed salary that did not vary with the number of hours worked during the week, we conclude that the jury instructions and interrogatories were proper.

We first set forth the standard of review applicable to a challenge to a jury instruction. "When reviewing [a] challenged jury instruction . . . we must adhere to the well settled rule that a charge to the jury is to be considered in its entirety, read as a whole, and judged by its total effect rather than by its individual component parts. . . . [T]he test of a court's charge is not whether it is as accurate upon legal principles as the opinions of a court of last resort but whether it fairly presents the case to the jury in such a way that injustice is not done to either party under the established rules of law. . . . As long as [the instructions] are correct in law, adapted to the issues and sufficient for the guidance of the jury . . . we will not view the instructions as improper." (Internal quotation marks omitted.) *Archambault* v. *Soneco/Northeastern, Inc.*, 287 Conn. 20, 42, 946 A.2d 839 (2008).

---

as an exception rather than an alternate method of calculating the amount of overtime due to an employee, thus improperly placing the burden on the defendants to demonstrate the applicability of the fluctuating workweek method; (3) improperly instructed the jury that contemporaneous payment of overtime is a necessary prerequisite for the applicability of the fluctuating workweek method; (4) improperly refused to provide the jury with instructions for calculating overtime compensation utilizing the fluctuating workweek method; and (5) improperly concluded that the fluctuating workweek method did not apply to the plaintiff's state law claims, brought pursuant to §§ 31-68 and 31-72.

This court has not yet had the opportunity to construe § 778.114 of the federal regulations. Therefore, we look to interpretive federal case law for guidance. The act requires that employees be compensated at a premium rate for overtime hours, that is, hours worked in excess of forty hours per week. 29 U.S.C. § 207 (a).[11] The premium rate for overtime hours is "a rate not less than one and one-half times the regular rate at which [the employee] is employed." 29 U.S.C. § 207 (a) (1). Because the overtime premium rate is a multiple of the "regular" hourly rate, the amount of the overtime rate directly depends on the amount of the "regular" hourly rate. The Code of Federal Regulations sets forth two alternate methods for calculating the regular hourly rate and overtime premium rate for employees who are paid a weekly salary: the fixed salary method and the fluctuating workweek method. "[T]he fixed weekly salary

---

[11] Section 207 (a) of title 29 of the United States Code, which applies to employees engaged in interstate commerce, provides: "(1) Except as otherwise provided in this section, no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

"(2) No employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, and who in such workweek is brought within the purview of this subsection by the amendments made to this chapter [29 U.S.C. § 201 et seq.] by the Fair Labor Standards Amendments of 1966—

"(A) for a workweek longer than forty-four hours during the first year from the effective date of the Fair Labor Standards Amendments of 1966 [effective February 1, 1967],

"(B) for a workweek longer than forty-two hours during the second year from such date, or

"(C) for a workweek longer than forty hours after the expiration of the second year from such date,

"unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed."

method . . . governs employees who receive a fixed salary that is intended to compensate a specific number of hours of labor (e.g., $400 for 40 hours). 29 C.F.R. § 778.113 (a).[12] The . . . fluctuating workweek method . . . applies when an employee is paid a fixed weekly salary regardless of how many hours the employee may work in a given week." (Internal quotation marks omitted.) *O'Brien* v. *Agawam*, 350 F.3d 279, 287 (1st Cir. 2003).[13]

An illustration is helpful in understanding how the two methods differ. Suppose that an employee is compensated $800 per week. Under the fixed weekly salary method, that salary is considered to be compensation for the regular weekly hours worked by the employee, up to forty hours. Suppose further, for the purpose of this illustration, that the employee's regular hours are forty hours per week. If the employee works forty-five hours in a given week, the employee's overtime compensation is calculated by determining his regular hourly rate, which under these facts would be $20 per hour. That rate is then multiplied by one and one-half

[12] Section 778.113 (a) of title 29 of the Code of Federal Regulations, which sets forth the fixed weekly salary method of calculating overtime hours, provides: "If the employee is employed solely on a weekly salary basis, his regular hourly rate of pay, on which time and a half must be paid, is computed by dividing the salary by the number of hours which the salary is intended to compensate. If an employee is hired at a salary of $182.70 and if it is understood that this salary is compensation for a regular workweek of 35 hours, the employee's regular rate of pay is $182.70 divided by 35 hours, or $5.22 an hour, and when he works overtime he is entitled to receive $5.22 for each of the first 40 hours and $7.83 (one and one-half times $5.22) for each hour thereafter. If an employee is hired at a salary of $220.80 for a 40-hour week his regular rate is $5.52 an hour."

[13] The United States Department of Labor promulgated § 778.114 of the federal regulations in order to implement the holdings of two decisions of the United States Supreme Court. See *Walling* v. *A.H. Belo Corp.*, 316 U.S. 624, 62 S. Ct. 1223, 86 L. Ed. 1716 (1942); *Overnight Motor Transportation Co.* v. *Missel*, 316 U.S. 572, 62 S. Ct. 1216, 86 L. Ed. 1682 (1942); see also *O'Brien* v. *Agawam*, supra, 350 F.3d 287 n.15; *Hunter* v. *Sprint Corp.*, 453 F. Sup. 2d 44 (D.D.C. 2006).

to arrive at the overtime premium rate of $30 per hour. Under that formula, for the five hours of overtime, the employee receives additional compensation of $150, yielding a total salary that week of $950. If the employee works fifty hours in a given week, the amount of overtime pay for the ten hours of overtime would be $300, yielding a total salary that week of $1100. If the employee works only thirty hours in a given week, the employee's pay is reduced accordingly, by $200, yielding a total salary that week of $600.

By contrast, under the fluctuating workweek method, the employee's salary of $800 is considered to be straight time pay for the total number of hours that the employee worked that week, regardless of how few or how many. Id., 288. Under this method of compensation, an employee who works forty-five hours in a given week will receive $800 in straight time pay for the entire forty-five hours, yielding a regular hourly rate of approximately $17.78. The overtime rate is calculated by multiplying the regular hourly rate by one half, since the employee already has been deemed to be compensated the regular hourly rate for each of the five hours of overtime. This method yields $44.45 in overtime payments for the 5 hours of overtime, resulting in a total salary that week of $844.45 ($800 ÷ 45 [total hours worked that week] = $17.78 [regular hourly rate]; $17.78 x 0.5 = $8.89 [overtime rate]; $8.89 x 5 [number of overtime hours] = $44.45). An employee who works fifty hours in a given week is paid a regular hourly rate of $16 per hour for those fifty hours, with an additional $80 of overtime compensation, yielding a salary that week of $880. An employee who works thirty hours in a given week will receive $800.

This example illustrates some important principles underlying the fluctuating workweek method. First, the regular hourly rate of pay for straight time varies depending on the total number of hours worked per week. That is, the more hours an employee works in a

given week, the lower the regular hourly rate that the employee receives as compensation for straight time. Second, because the weekly salary compensates the employee for straight time pay for the *total* hours worked in a given week, rather than only the first forty, as in the fixed weekly salary method, the additional compensation due to an employee for overtime hours, in order to satisfy the requirement that the overtime premium equal one and one-half times the regular hourly rate, is only one half of the regular hourly rate for each overtime hour worked. Third, the fluctuating workweek method guarantees that the weekly salary remains the same no matter how few hours the employee works in a given week.

The United States Court of Appeals for the First Circuit has held that four conditions must be established before an employer may rely on the fluctuating workweek method of calculating overtime premiums: "(1) the employee's hours must fluctuate from week to week; (2) the employee must receive a fixed salary that does not vary with the number of hours worked during the week (excluding overtime premiums); (3) the fixed amount must be sufficient to provide compensation every week at a regular rate that is at least equal to the minimum wage; and (4) the employer and employee must share a 'clear mutual understanding' that the employer will pay that fixed salary regardless of the number of hours worked." Id. Other federal Circuit Courts of Appeal have required that an additional, fifth condition, be established before an employer may rely on the fluctuating workweek method to calculate the amount of overtime due to an employee, namely, that the employer must have actually paid the overtime premiums to the employee at the time that the overtime payments were due.[14] See, e.g., *Flood* v. *New Hanover County*, 125 F.3d 249, 252 (4th Cir. 1997).

---

[14] Because we conclude that the defendants did not satisfy the second condition of the four part test used by the First Circuit, we need not decide

The defendants claim that, by characterizing the fluctuating workweek method as an "exception" rather than an "alternative" to the fixed salary method of calculating overtime premiums, the trial court improperly allocated the burden upon them to demonstrate that the fluctuating workweek method applied under the facts of the present case. The defendants contend, to the contrary, that the plaintiff bore the burden to show that the fluctuating workweek method did not apply. The federal courts are divided on this issue. See, e.g., *Samson* v. *Apollo Resources, Inc.*, 242 F.3d 629, 636–37 (5th Cir.) (placing burden on employee), cert. denied, 534 U.S. 825, 122 S. Ct. 63, 151 L. Ed. 2d 31 (2001); *Cash* v. *Conn Appliances, Inc.*, 2 F. Sup. 2d 884, 896 (E.D. Tex. 1997) (same); *Monahan* v. *Chesterfield*, 95 F.3d 1263, 1275 n.12 (4th Cir. 1996) (employer bears burden); *Giles* v. *New York*, 41 F. Sup. 2d 308, 317 (S.D.N.Y. 1999) (same); *Hunter* v. *Sprint Corp.*, 453 F. Sup. 2d 44, 59 n.17 (D.D.C. 2006) (federal overtime regulations create "rebuttable presumption" that "employee's 'regular rate' will be constant rather than fluctuating").

We find more persuasive those decisions concluding that the federal regulations create a rebuttable presumption that the fixed salary method applies, and that the employer bears the burden to show that the fluctuating workweek method applies under the facts of the case. The court in *Hunter* v. *Sprint Corp.*, supra, 453 F. Sup. 2d 59, explained the policy reasons underlying the allocation of the burden to the employer: "[I]n order to prevent the use of fixed weekly salaries as a means of manipulating an employee's regular rate under the statute, [§ 778.114 of the federal regulations] strictly limits the circumstances in which an employer is authorized to treat the employee's regular rate of pay as a variable and thus use the fluctuating overtime cal-

whether the fifth condition also included as part of the test by other circuits is required by § 778.114 of the federal regulations.

culation method. Most significantly, the regulation requires that the employee clearly [understand] that the salary covers whatever hours the job may demand in a particular workweek *and* [that] the employer [pay] the salary even though the workweek is one in which a full schedule [of] hours is not worked. . . . Furthermore, the [fluctuating workweek] method contemplates that the employee's hours actually fluctuate from week to week. . . . And, by its plain terms, the method applies only when (1) the parties clearly agree that the fixed salary constitutes adequate straight-time payment (i.e., compensation apart from overtime premiums) for all hours worked and (2) the employee receives extra compensation of at least half his regular rate of pay, in addition to the fixed salary, for overtime hours during the weeks when he works overtime." (Citations omitted; emphasis altered; internal quotation marks omitted.)

A close examination of the language of § 778.114 of the federal regulations confirms that the regulation intends that the employer seeking to rely on the fluctuating workweek method must show that it applies. Subsection (a) of § 778.114 contains language that indicates that the four conditions identified by the federal courts are prerequisites for the application of the fluctuating workweek method. For example, it provides in relevant part: "*Where* there is a clear mutual understanding of the parties that the fixed salary is compensation (apart from overtime premiums) for the hours worked each workweek, whatever their number, rather than for working [forty] hours or some other fixed weekly work period, such a salary arrangement is permitted by the [a]ct *if* the amount of the salary is sufficient to provide compensation to the employee at a rate not less than the applicable minimum wage rate for every hour worked in those workweeks in which the number of hours he works is greatest, and *if* he receives extra compensa-

tion, in addition to such salary, for all overtime hours worked at a rate not less than one-half his regular rate of pay. . . ." (Emphasis added.) 29 C.F.R. § 778.114 (a). The italicized language indicates that the enumerated conditions are prerequisites that must be satisfied before the fluctuating workweek method may be applied to the calculation of overtime due to an employee. This interpretation is reinforced by the language in subsection (c) of § 778.114, which provides in relevant part: "The 'fluctuating workweek' method of overtime payment *may not be used unless* the salary is sufficiently large to assure that no workweek will be worked in which the employee's average hourly earnings from the salary fall below the minimum hourly wage rate applicable under the [a]ct, and *unless* the employee clearly understands that the salary covers whatever hours the job may demand in a particular workweek *and* the employer pays the salary even though the workweek is one in which a full schedule of hours is not worked. . . ." (Emphasis added.) 29 C.F.R. § 778.114 (c). The italicized language indicates that in the absence of the stated conditions, the fluctuating workweek method may not be applied. Finally, and most persuasively, subsection (c) of § 778.114 provides in relevant part that "[w]here all the *legal prerequisites* for use of the 'fluctuating workweek' method of overtime payment are present, the [a]ct, in requiring that 'not less than' the prescribed premium of 50 percent for overtime hours worked be paid, does not prohibit paying more. . . ." (Emphasis added.) 29 C.F.R. § 778.114 (c). The regulation, therefore, expressly identifies the conditions as "legal prerequisites." Based on the language of the regulation, and the interpretive case law, we are persuaded that the more logical allocation of the burden of proof is to require the defendants to show that the conditions precedent to the application of the fluctuating workweek method were satisfied.

Because we conclude that the defendants failed to sustain their burden to establish the second of the four conditions outlined by the First Circuit Court of Appeals; see *O'Brien* v. *Agawam*, supra, 350 F.3d 288; namely, that they paid the plaintiff a fixed salary, regardless of how many or how few hours he worked in a given week, we conclude that the defendants failed to satisfy their burden of showing that the fluctuating workweek method applied to the calculation of the amount of overtime pay that they owed to the plaintiff. Id. The trial court discussed this issue in its memorandum of decision, in addressing the defendants' claim that the court improperly failed to instruct the jury that disciplinary deductions from an employee's pay do not prevent an employer from relying on the fluctuating workweek method in calculating the amount of overtime due to the employee. The court stated that the instruction "was not required since the defendants did not introduce evidence from which such a finding could have been made as to the relevant pay periods of August 26 and September 2, 2004. [The] [d]efendants offered a disciplinary justification for [their] deduction with respect to the August 19, 2004 paycheck only, not for the reduced paychecks from August 26, 2004 and September 2, 2004."[15]

"In determining whether the trial court improperly refused to give a requested charge, we review the evi-

---

[15] Although § 778.114 of the federal regulations is silent as to whether disciplinary deductions are permitted under the fluctuating workweek method, federal courts have concluded that such deductions are not inconsistent with § 778.114. See, e.g., *Samson* v. *Apollo Resources, Inc.*, supra, 242 F.3d 638. The defendants contend that disciplinary deductions include deductions "for willful absences or tardiness or for a situation such as an employee being sent home from work because of drunkenness." Opinion Letter, Fair Labor Standards Act, Department of Labor (May 28, 1999) (1999 WL 1002415); see also *Samson* v. *Apollo Resources, Inc.*, supra, 638–39 (deductions for wilful absences and tardiness are permissible disciplinary deductions). Because we agree with the trial court that the evidence did not support the instruction, we need not reach the issue of whether a disciplinary deduction would be allowed under the fluctuating workweek method.

dence presented at trial in the light most favorable to supporting the proposed charge. . . . A request to charge which is relevant to the issues of [a] case and which is an accurate statement of the law must be given. . . . If, however, the evidence would not reasonably support a finding of the particular issue, the trial court has a duty not to submit it to the jury. . . . Thus, a trial court should instruct the jury in accordance with a party's request to charge [only] if the proposed instructions are reasonably supported by the evidence." (Citation omitted; internal quotation marks omitted.) *National Publishing Co.* v. *Hartford Fire Ins. Co.*, 287 Conn. 664, 671, 949 A.2d 1203 (2008).

The plaintiff introduced evidence to show that the defendants took deductions from his weekly salary, for time missed, for the pay periods coinciding with checks paid to him by the defendants dated August 19, 2004, August 26, 2004, and September 9, 2004. During each of those pay periods, the defendants did not pay the plaintiff his regular salary of $833.13, but instead paid him a reduced salary of $666.50, a figure they arrived at by first dividing his regular salary by forty hours to arrive at a regular hourly rate of pay of $20.83. They then multiplied the regular hourly rate by eight and subtracted that amount from $833.13 to arrive at $666.50.[16] The only testimony that the defendants offered in support of their claim that the deductions were permissible as disciplinary in nature was, as the trial court stated in its memorandum of decision, in

[16] We further note our agreement with the trial court that the defendants' method of calculating the amount of the deduction from the plaintiff's paycheck is inconsistent with their contention that the fluctuating workweek method is applicable to calculating the amount of overtime that they owe to the plaintiff. Specifically, the defendants relied on a forty hour workweek model in calculating the regular hourly rate, which resulted in a higher hourly rate and, therefore, in a higher deduction than would have been allowed had they been relying on the fluctuating workweek method to calculate the plaintiff's regular hourly rate.

connection with the deduction taken from the paycheck issued on August 19, 2004. In connection with that deduction, Harry Knowles testified that he and the plaintiff had had a "big fight" on Wednesday of that week, after which the plaintiff left work. Knowles further testified that the plaintiff failed to report to work on the following day. In arguing their posttrial motion to set aside the award of damages and for remittitur, in which the defendants sought application of the fluctuating workweek method to the calculation of the amount of overtime owed to the plaintiff, the defendants again discussed only the August 19, 2004 deduction in the context of their claim that the deductions were permissible as disciplinary deductions.[17] The defendants have not pointed to any testimony that would support a similar argument for the deductions taken from the paychecks for the remaining two weeks. Harry Knowles testified regarding only the deduction taken from the August 19, 2004 paycheck. The trial court, therefore, properly declined to give the requested instruction.

In the absence of a showing that all of the deductions taken from the plaintiff's weekly salary fell under some exception to the requirement that the defendants pay the plaintiff a fixed salary, regardless of how many or how few hours he worked in a given week, the defendants have failed to meet their burden of showing that they are entitled to rely on the fluctuating workweek method to calculate the amount of overtime due to the plaintiff. Because we conclude that the defendants have failed to make this required showing, we conclude that the trial court properly stated in its instructions to the

---

[17] In fact, in their argument on the posttrial motion, the defendants insisted, despite the evidence produced at trial by the plaintiff showing similar deductions in the paychecks issued on August 26, 2004 and September 9, 2004, that the only deduction they had taken from the plaintiff's salary was the August 19, 2004 deduction.

jury that the fluctuating workweek method of calculating the amount of overtime to which an employee is entitled is inapplicable when an employer has taken deductions from an employee's base salary. It was unnecessary for the trial court to qualify that instruction, given the evidence presented at trial, by stating that a disciplinary deduction would not preclude the application of the fluctuating workweek method. As the court stated in its memorandum of decision, such an instruction was not supported by the evidence. For the same reason, we conclude that the trial court properly structured the jury interrogatories in such a way that the jury was precluded from applying the fluctuating workweek method if it determined that the defendants had taken such deductions from the plaintiff's base salary. Moreover, because we conclude that the defendants failed to establish the second of the four conditions agreed upon by all of the Circuit Courts of Appeal that have considered the application of § 778.114 of the federal regulations, namely, that the defendants have paid the plaintiff a fixed salary, regardless of how many or how few hours he worked in a given week, it is unnecessary for us to reach the defendants' claims that the trial court improperly instructed the jury that contemporaneous payment of overtime is a necessary prerequisite for the applicability of the fluctuating workweek method, and that the fluctuating workweek method did not apply to the plaintiff's claims under state law, which were brought pursuant to §§ 31-68 and 31-72.

II

We next address the defendants' claim that the act preempts the application of §§ 31-68 and 31-72. The defendants concede that they did not raise this claim at the trial court. They contend, however, that the trial court's failure to conclude that federal preemption precluded the application of the state statutes to the plain-

tiff's claim constituted plain error. The plaintiff counters that the defendants properly should have raised their claim of federal preemption as a special defense to the plaintiff's claims brought pursuant to §§ 31-68 and 31-72, and, therefore, that the defendants' failure to plead federal preemption as a special defense constituted a waiver of that defense. Because the defendants' defense of federal preemption does not dictate the choice of forum,[18] we agree with the plaintiff that the defendants waived the special defense of federal preemption by failing to plead it or object to evidence that related to the issue. See *Saks* v. *Franklin Covey Co.*, 316 F.3d 337, 349 (2d Cir. 2003) ("[i]n [*International Longshoremen's Assn.* v. *Davis*, 476 U.S. 380, 106 S. Ct. 1904, 90 L. Ed. 2d 389 (1986)], the [United States] Supreme Court made clear that preemption issues that dictate the choice of forum are jurisdictional and therefore may not be waived, but expressly stated that this rule does not extend to preemption issues that affect the parties' choice of law"); *Piekarski* v. *Home Owners Savings Bank, F.S.B.*, 956 F.2d 1484, 1489 (8th Cir.) (holding that appellant's failure to raise preemption argument until posttrial motions constitutes waiver of defense), cert. denied, 506 U.S. 872, 113 S. Ct. 206, 121 L. Ed. 2d 147 (1992).

It is well established "that the failure to file a special defense may be treated as waived when no objection has been raised to the offer of evidence on the issue [at the trial]." (Internal quotation marks omitted.) *Statewide Grievance Committee* v. *Presnick*, 216 Conn. 135, 137 n.3, 577 A.2d 1058 (1990). Because the defendants did not file a special defense of federal preemption to the plaintiff's claims brought pursuant to §§ 31-68 and 31-72, and did not object to any of the evidence intro-

---

[18] Section 216 (b) of title 29 of the United States Code confers concurrent jurisdiction on state and federal courts to hear claims brought pursuant to the act.

duced to support the plaintiff's claims based on those statutes, the defendants waived this special defense and cannot now seek plain error review.

## III

We next address the defendants' evidentiary claims, including their claims that the trial court: (1) improperly refused to allow the defendants to cross-examine the plaintiff as to his hours of work during the pay period prior to the plaintiff becoming a salaried employee; (2) abused its discretion in precluding the defendants from admitting into evidence an alternate calculation of hours that the plaintiff had worked; and (3) improperly precluded the defendants from cross-examining the plaintiff as to his employment status after leaving the defendants' company. We conclude that the trial court did not abuse its discretion in deciding the first two evidentiary rulings, and we decline to address the third evidentiary claim because it is inadequately briefed.

We first set forth the applicable standard of review. "Unless an evidentiary ruling involves a clear misconception of the law, [t]he trial court has broad discretion in ruling on the admissibility . . . of evidence. . . . The trial court's ruling on evidentiary matters will be overturned only upon a showing of a clear abuse of the court's discretion. . . . We will make every reasonable presumption in favor of upholding the trial court's ruling . . . . Moreover, evidentiary rulings will be overturned on appeal only where there was an abuse of discretion and a showing by the defendant of substantial prejudice or injustice." (Internal quotation marks omitted.) *State* v. *Griggs*, 288 Conn. 116, 136–37, 951 A.2d 531 (2008).

The defendants first claim that the trial court improperly refused to allow them to cross-examine the plaintiff as to his hours of work during the pay periods prior to the plaintiff becoming a salaried employee on September 22, 1999. The trial court did not allow the cross-

examination based on its determination that the number of weekly hours that the plaintiff worked prior to the period for which the plaintiff sought recovery for unpaid overtime, which included only those pay periods following his change to salaried status, was irrelevant to the plaintiff's claim. The defendants argue that the cross-examination of the plaintiff on this issue would have been relevant to support their contention that the fluctuating workweek method should apply to the jury's calculation of the plaintiff's damages. Because we have concluded that the defendants did not establish that they paid the plaintiff a fixed salary, regardless of the number of hours the plaintiff worked in a given week, during the *relevant* time period, and, therefore, that the defendants were not entitled to rely on the fluctuating workweek method of calculating the plaintiff's overtime wages, this argument is unavailing. The court's ruling was not an abuse of discretion.

The defendants' second evidentiary claim is that the trial court abused its discretion in precluding them from admitting into evidence an alternate calculation of hours that the plaintiff had worked. We disagree.

The following additional procedural background is relevant to our resolution of this claim. Because the defendants did not maintain records of the hours the plaintiff worked during the relevant time period, the plaintiff was allowed to introduce into evidence a calendar representing his reasonable estimate of the number of hours he had worked during the relevant time period.[19] The defendants proffered the proposed alter-

---

[19] The United States Supreme Court has recognized that in an action to recover unpaid overtime pursuant to the act, the employee bears the burden of establishing the number of hours he worked. *Anderson* v. *Mt. Clemens Pottery Co.*, 328 U.S. 680, 687, 66 S. Ct. 1187, 90 L. Ed. 1515 (1946). Ordinarily, "[w]hen the employer has kept proper and accurate records, the employee may easily discharge his burden by securing the production of those records. But where the employer's records are inaccurate or inadequate and the employee cannot offer convincing substitutes . . . an employee has carried out his burden if he proves that he has in fact performed work for which

nate calculation at trial in order to dispute the number of hours that the plaintiff claimed to have worked during the relevant time period. The trial court denied the defendants' motion in limine at the beginning of the trial seeking to introduce the alternate calculation of the plaintiff's hours into evidence, ruling that the defendants had not provided sufficient evidentiary support to justify admitting the document into evidence. The trial court allowed the document to be marked for identification, and left open the possibility that it subsequently could come into evidence if the defendants provided testimonial support for the alternate calculation of hours.

The defendants again attempted to introduce the exhibit into evidence during the testimony of Samuel Hall, who worked for the defendants primarily as a dispatcher, and also worked part-time as a mechanic. During his testimony, Hall stated that he had prepared the alternate calculation of hours for the defendants based on *his* "fairly good estimate" of the time required for the tasks listed in the vehicle maintenance logs. The plaintiff objected to the admissibility of the exhibit and, outside the presence of the jury, contended that the exhibit constituted expert testimony, and that Hall had not been qualified as an expert. The plaintiff also objected on the basis that Hall had testified that he did not know who had performed each particular task specified in the vehicle maintenance reports. The plaintiff claimed that the defendants had not established a sufficient foundation for the exhibit. The court sus-

he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference. The burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence. If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result be only approximate." Id., 687–88.

tained the plaintiff's objection to the exhibit. Putting aside the plaintiff's argument that Hall first should have been qualified as an expert, the trial court's decision to exclude the exhibit based on the lack of a foundation for the evidence due to the fact that Hall testified that he did not know, when preparing the spreadsheet, who had performed each task specified in the vehicle maintenance reports, was squarely within the court's discretion.

The defendants next claim that the trial court improperly precluded them from cross-examining the plaintiff as to his employment status after leaving the defendants' company. In support of this claim, the defendants offer a one sentence argument, stating merely that the plaintiff's subsequent employment status was relevant to the plaintiff's "motive." The defendants do not explain how motive is relevant to the application of the fluctuating workweek method, nor do they answer the question—"motive for what?" Accordingly, we deem this cryptic statement insufficient to constitute an adequate briefing of the issue and we decline to address it.

IV

Finally, we address the parties' challenges to the trial court's award of attorney's fees and costs. First, the defendants claim that the trial court improperly awarded the plaintiff supplemental attorney's fees. The defendants claim that the trial court's original award of attorney's fees following trial had been intended to include fees for all work performed at the trial level, and that the subsequent award of fees for hours spent on postverdict motions was improper. The plaintiff responds that the trial court's award of supplemental attorney's fees was not an abuse of its discretion. We agree with the plaintiff.

The following additional procedural history is relevant to the resolution of this claim. Following trial, in

a motion filed on October 2, 2006, the plaintiff sought attorney's fees and costs, and provided in support of his motion time records detailing the hours expended by his attorneys up to and including September 28, 2006. On November 1, 2006, the court held a hearing on the motion, and subsequently awarded the plaintiff $126,414.80 in attorney's fees and costs pursuant to 29 U.S.C. § 216 (b)[20] and §§ 31-68 (a) and 31-72.[21] On November 22, 2006, the plaintiff filed a supplemental motion for attorney's fees and costs, seeking an award for work performed on various posttrial motions, including time expended on the original motion for attorney's fees. The time records attached in support of the supplemental motion begin where the time records for the first motion for fees had ended, on September 29, 2006.

"It is well established that we review the trial court's decision to award attorney's fees for abuse of discretion. . . . This standard applies to the amount of fees awarded . . . and also to the trial court's determination of the factual predicate justifying the award. . . . Under the abuse of discretion standard of review, [w]e will make every reasonable presumption in favor of upholding the trial court's ruling, and only upset it for a manifest abuse of discretion. . . . [Thus, our] review of such rulings is limited to the questions of whether the trial court correctly applied the law and reasonably could have reached the conclusion that it did." (Citations omitted; internal quotation marks omitted.) *Schoonmaker* v. *Lawrence Brunoli, Inc.*, 265 Conn. 210, 252–53, 828 A.2d 64 (2003). The defendants' claim that

---

[20] Section 216 (b) of title 29 of the United States Code provides in relevant part: "The court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action. . . ."

[21] Both §§ 31-68 (a) and 31-72 provide in relevant part that a prevailing plaintiff-employee may recover "costs and such reasonable attorney's fees as may be allowed by the court . . . ."

it was clear from the original motion for fees that the parties had intended, and the trial court had determined, that the original award of fees was to be all-inclusive, is not supported by the record. The record establishes that the original motion clearly indicated that it was intended to seek recovery for fees and costs only up to and including September 28, 2006, as demonstrated by the attached time records to the original motion. It was within the trial court's discretion to award additional fees on the supplemental motion for work on posttrial motions after that date.

Finally, we address the plaintiff's claim on cross appeal that the trial court improperly based its calculation of the reasonable hourly rate for the plaintiff's counsel on the local rate in the New London judicial district rather than relying on a statewide standard or awarding attorney's fees pursuant to the plaintiff's counsel's current hourly rate. As we already have stated, the trial court's determination of fees is reviewed under the abuse of discretion standard.[22] Id.

"Rule 1.5 (a) of the Rules of Professional Conduct lists the factors that ordinarily determine the reasonableness of an attorney's fee. These factors include the time and labor required, the novelty and difficulty of the questions involved, and the fee customarily charged in the locality for similar legal services." *Sorrentino* v. *All Seasons Services, Inc.*, 245 Conn. 756, 775, 717 A.2d 150 (1998).

---

[22] The plaintiff incorrectly states that we have plenary review of the trial court's determination that the applicable community is New London rather than the state of Connecticut. It is well established, both in our case law and in the case law of the federal courts, that the determination of the appropriate fee is within the broad discretion of the trial court. See *Assn. for Retarded Citizens* v. *Thorne*, 68 F.3d 547, 554 (2d Cir. 1995) (noting that "[D]istrict [C]ourt has discretion in determining the amount of a fee award," and that "appellate review of the [D]istrict [C]ourt's decision regarding attorney's fees is narrow" [internal quotation marks omitted]); *Schoonmaker* v. *Lawrence Brunoli, Inc.*, supra, 265 Conn. 252 (abuse of discretion standard "applies to the amount of fees awarded").

In arguing that the trial court improperly based its determination of the reasonable hourly rate on the New London judicial district locality, the plaintiff relies on two cases decided in the federal District Court that applied a statewide rate in determining the reasonable hourly rate. See *C.* v. *Board of Education*, 382 F. Sup. 2d 347, 349 (D. Conn. 2005); see also *C.G.* v. *Board of Education*, 988 F. Sup. 60, 68–69 (D. Conn. 1997) (adopting report and recommendation of magistrate). First, we note that neither of those cases addressed the issue of whether a territorial jurisdiction smaller than the state of Connecticut would be inappropriate. Second, we note that the reason that neither case addressed that issue is because the federal district of Connecticut does not include within it any smaller territorial jurisdictions. The state of Connecticut, however, does include within it smaller territorial jurisdictions, including the judicial district of New London.[23] In its November 15, 2006 order awarding attorney's fees to the plaintiff, the trial court explained that it was relying in part, as is proper, on its own knowledge and experience in determining the applicable hourly rate. See *Miele* v. *New York State Teamsters Conference Pension & Retirement Fund*, 831 F.2d 407, 409 (2d Cir. 1987). The trial court further relied on federal court precedent that application of "local market rates" was not an abuse of discretion. *Hudson* v. *Reno*, 130 F.3d 1193, 1208 (6th Cir. 1997), cert. denied, 525 U.S. 822, 119 S. Ct. 64, 142 L. Ed. 2d 50 (1998). As the Sixth Circuit Court of Appeals has aptly stated: "[I]t is not an abuse of discretion for a court to apply local market rates. Thus, a renowned lawyer who customarily receives $250 an hour in a field

[23] Thus, the plaintiff's claim that the trial court was obligated to apply a statewide rate is more akin to a claim that a federal court would be obligated to apply a circuit-wide rate. In the Second Circuit, that would mean that the same hourly rate would be applicable to cases tried in the District Court for the District of Connecticut and the District Court for the Southern District of New York.

in which competent and experienced lawyers in the region normally receive $85 an hour should be compensated at the lower rate." (Internal quotation marks omitted.) *Adcock-Ladd* v. *Secretary of Treasury*, 227 F.3d 343, 350 (6th Cir. 2000).

For the same reason, we reject the plaintiff's claim that the trial court abused its discretion in failing to apply the then current hourly rate of the plaintiff's counsel. The court properly exercised its broad discretion to apply the local market rate; the mere fact that the plaintiff's attorney ordinarily charges his clients more than that rate is immaterial.

The judgment is affirmed.

In this opinion the other justices concurred.